THOMAS MORTON *versus* INHABITANTS OF FRANKFORT.

Towns are not liable for injuries occasioned by such obstructions as are necessarily created in highways in order to repair them, provided reasonable measures are taken to notify travellers of their existence.

Such obstructions are not, in any proper sense, defects.

What are reasonable measures.

ON MOTION to set aside the verdict.

CASE for injury sustained by the plaintiff by reason of an alleged defect in a highway in the town of Frankfort, which highway it was admitted the defendants were bound to keep in repair.

*John A. Rines,* called by the plaintiff, testified:—I was driving a three horse team through Frankfort Marsh village, so called, April 30, 1857, and noticed some men, and oxen and cart, and a plank standing up in the road by the culvert. One of the men was Freeman C. Parker, surveyor of the district. The road was a gradual descent and smooth from where I was when I first saw team down to the culvert. Had 300 feet of green hard wood ship plank, weighing at least two tons, on my wagon. Horses trotted slowly. When some 75 feet from culvert, Parker gave notice by hailing. Told me to go to the left for there was a hole there. The hole was three to four feet wide, three to four feet deep, and extending from the west side to east of the center of the road. On the east side, about ten feet of the road had not caved in. The ox-team was standing on the

east side when I hove in sight. The ox-team started along towards me. I tried to rein up my horses, could not stop them. Swung leaders to. Sheered off pole horses that leaders might not get into hole, and that my team might not hit the cart. Rim of my near hind wheel hit hub of ox-cart. Collision broke draft of cart and my hind axle. The collision took place about thirty feet from the hole. I looked around and saw plaintiff lying on his back in the road behind my team. Plank swung down from my wagon and broke plaintiff's leg.

*Cross-examination.* — Discovered plank in the hole when 20 to 25 rods from it. Shoulders of the leaders about abreast of the hole when wheels collided. First saw plaintiff that day on the ground behind my wagon. My right hind wheel came off. Hind axle of my wagon thirty feet from fore.

*Thomas Morton,* testified: — About twenty rods from place of accident, I got upon hind end of the planks on Rines' wagon. Saw some men standing in the road ahead. Saw no plank sticking up in the road. Saw an ox-team. Rines' fore wheel passed the ox-team, but his hind wheel struck it, axle broke and plank came down upon my leg. Laid on my back forty-eight days. Leg did not heal entirely for four years. Did not hear Parker hail Rines. The road was descending, but good, smooth and hard. Rines tried to shear off from the ox-team, and then sheared to the other side to avoid the hole. Rines' team about fifty feet long. Don't know as Rines knew I was on his wagon. I got on to see the movement of his horses, as I had had talk with him about swapping. When I first noticed ox-team, it was moving towards us.

*Seldon Morton,* testified: — Am plaintiff's brother. Culvert 4 feet wide, twenty-six feet long, built of common stone covered with stringers and they covered with poles and dirt. Was under the culvert three weeks before accident. Wall on one side had partially fallen down, and the earth washed out from behind the wall, leaving a space of

the size of a hogshead. The cavity was directly under the place where the hole was on day of the accident. When I was under there, the crust of the earth was frozen.

*Levi Curtis*, testified : — Passed over the culvert April 30, 1857, in wagon. *Horse stumbled and fell. Found he had broken through. No hole there just before. Hole, foot or foot and one-half across.*

*Franklin C. Parker*, testified : — Was surveyor of district. Was notified of defect, April 30, 1857. Went immediately to fix it ; found hole about size of water-bucket, north side of culvert, about one-third of the way from west side of the road. Broke down the earth with a bar, and found cavity north side of wall of culvert. Stuck up a plank in the hole, extending eight to ten feet above the surface and ten to twelve inches wide. Hopkins came along with his ox-team and stopped a few minutes. Saw Rines when he came in sight. Hopkins started along. Rines was coming pretty good speed. Hailed him. Swung my hands. He was about 15 rods from hole when I called to him. When he stopped his team, head of his leader nearly opposite the hole. I get to the hole within ten minutes after I was notified of its existence, about eight o'clock in the morning of the 30th of April. Hopkins' ox-team had got some rods from the hole when the teams collided. Road twenty-five feet wide where collision took place.

The evidence was voluminous, but the foregoing contains its substance.

The verdict was for the plaintiff, whereupon the defendants moved it be set aside.

*N. H. Hubbard*, for the plaintiff.

*W. G. Crosby*, for the defendants.

WALTON, J. — Towns are not liable for injuries occasioned by such obstructions as are necessarily created in highways in order to repair them, provided reasonable measures are taken to notify travellers of their existence. Such ob-

structions are not in any proper sense defects. They are the necessary means to a lawful end, — means necessary to the performance of a duty imposed by law, — and when reasonable notice of their existence is given, create no liabilities on the part of towns for injuries occasioned by them. To hold towns liable in such cases would be to impose a penalty, not on their negligence, but on the means necessary to the performance of a legal duty. The law, rightly administered, will lead to no such absurd results.

The only obstruction in the road, at the time of the plaintiff's injury, was an excavation made by the highway surveyor in order to repair a culvert. The water had got behind one of the walls of the culvert and washed out the earth, and the only way to reach this subterranean cavity and repair it, was to make an opening above it.

Did the driver of the team on which the plaintiff was riding have reasonable notice of this obstruction? We think he did. The driver says the surveyor hailed him and told him there was a hole there when he was about seventy-five feet distant from it. Other witnesses say that the distance was much greater than that. But this was not the only notice. The surveyor had stuck up a plank in the excavation eight or ten feet high, and ten or twelve inches wide, and the driver admits that he saw this plank, and the men standing around it, at the distance of twenty or twenty-five rods. It will be remembered that this was in broad daylight, — about eight o'clock in the morning, — that the teamster was acquainted with the road and must have known that there was a culvert there; that the excavation was westerly of the center of the road, and only six or eight feet long, leaving enough of the unbroken road on the easterly side for teams to pass upon with safety; that the teamster saw the ox-team coming and knew that he must meet and pass it before reaching the culvert. If, under these circumstances, the teamster was unable to keep out of the excavation, and at the same time avoid running against

the ox-cart, we think it must have been for some reason other than the fault of the town or the surveyor. We think the notice of the unsafe condition of the road was amply sufficient, — all that the most prudent man would have deemed necessary.

We of course recognize the soundness of the argument, that the mere enlargement of a hole by the lapse of time and the action of the elements will not affect the liability of the town. But there is no analogy between such a case and the one now under consideration. Here the hole was not enlarged by the lapse of time and the action of the elements, but an excavation was intentionally and necessarily made in order to effect repairs. The fact that there was a dangerous defect there before the surveyor commenced operations, instead of creating, frees the town from responsibility. It is the surveyor's justification for creating such an obstruction. Being necessary it was lawful. If it had not been necessary it would have been unlawful.

When a highway surveyor is about to commence repairs of such a character that while they are being made the road cannot be used with safety, he would undoubtedly be justified in closing it till the repairs should be completed. But when, as in this case, the repairs can be made in a short time, and enough of the road will remain unobstructed for travellers to pass upon with safety, he ought not to close it. To do so would subject the public to an unreasonable inconvenience. His duty in such cases is to adopt reasonable measures for notifying travellers of the condition of the road, — what portions must be avoided, and what portions can be used, — and then proceed to make the necessary repairs as soon as possible; and when he has done this he has done his whole duty. The town will be freed from responsibility, and travellers will use the road at their own risk. If he proceeds to make the repairs without giving such notice, the liability of the town for injuries will continue.

If in this case, the highway surveyor, when notified that a horse's foot had broken through the culvert, had com-

menced fencing up the road instead of setting himself to work to repair it, we cannot doubt that he would have been looked upon by the entire community as a fool or an insane man. The defect was one which could be repaired in a very short time, and, while the repairs were being made, enough of the smooth hard road would remain undisturbed for travellers to pass upon with safety. To have fenced up the road would, in our judgment, have subjected the public to an unreasonable inconvenience. The surveyor stuck up a plank in the hole eight or ten feet high and ten or twelve inches wide. It seems to us that such an object standing over a culvert, and in the travelled part of the road, would sufficiently indicate that that portion of the road was not in a usable condition. But this was not all. The surveyor himself remained by the excavation and actually hailed the driver of the team on which the plaintiff was riding at the time of the accident, and told him there was a hole there, when he was at least seventy-five feet from it. Other witnesses, as before stated, say that the distance was much greater than that, but the driver himself fixes the distance at not less than seventy-five feet.

Our conclusion is, that towns are not liable for injuries occasioned by obstructions in highways, necessarily created in order to repair them, provided reasonable notice of the condition of the road is given; that the only obstruction in the road at the time of the plaintiff's injury, was an excavation necessarily made in order to repair a defective culvert; that reasonable and suitable measures were taken to notify travellers of the condition of the road, and that the driver of the team on which the plaintiff was riding, in particular, had such notice; and if it can be said that the plaintiff was himself free from fault in getting on to the hind end of a heavily loaded lumber wagon without the knowledge or consent of the driver, and without right, and that the excavation in the road was the sole and proximate cause of his injury, (a proposition the truth of which may well be doubted, for it will be remembered that the collision with the ox-cart, and

the breaking of the plaintiff's leg,. took place before the excavation was reached,) we think, that inasmuch as the excavation was necessarily made for a lawful purpose, and reasonable notice of it given, the plaintiff's loss, so far as the town is concerned, was "*damnum absque injuria,*" and that he cannot maintain an action against the town to recover the damages he thereby sustained.

Perhaps we ought to notice the argument that, if this culvert had been repaired sooner, as it should have been, the plaintiff's injury would not have happened. It may be asserted with equal truth that if it had not been repaired so soon by a day, or even an hour, the accident would not have occurred. The teamster might have got one of his horse's legs into the hole that was there before the surveyor commenced operations and broken it, but there is no reason to suppose that such an accident would have ended in breaking the plaintiff's leg. The answer to this argument based on mere delay is that the excavation, being necessary, was therefore lawful, and as lawful on the morning of the accident as it would have been the day before, and to human foresight no more dangerous on the morning of the accident than it would have been the day before, —no more dangerous at the moment of the accident than it would have been the first moment the defect in the culvert was discovered. The unfortunate conjuncture of time and other circumstances which caused the plaintiff's injury were beyond the reach of human foresight. It could not be foreseen that the excavation necessary to repair the culvert would be more dangerous on the morning of the accident than at any other time. It was as lawful then as at any other time, and the liability of the town for injuries occasioned by it was therefore no greater then than at any other time.

The hole that was in the road before the surveyor commenced operations had no agency whatever in producing the plaintiff's injury, except upon the principle that all which goes before is necessary to produce what comes after, thus making the chain of causation endless. The teamster did

not drive into it; he had not reached the place where it was, even, when the accident happened. He never, in fact, had any knowledge of its existence till after the accident had occurred. It could not therefore have influenced his conduct. It was the excavation made by the surveyor, that he was endeavoring to avoid when the collision with the cart took place; and the proposition that the hole that existed in the road before the surveyor commenced operations, was the proximate cause of the plaintiff's injury, cannot for a moment be maintained. It was at most but one of the remote circumstances which combined to produce it. "*In jure, causa proxima, non remota, spectatur.*"

We think, upon the plaintiff's own showing, he is not entitled to recover, and that the presiding Judge would have been justified in ordering a nonsuit.

> *Motion sustained. — Verdict set aside. —*
> *New trial granted.*

APPLETON, C. J., CUTTING, KENT, BARROWS and DANFORTH, JJ., concurred.