William Flam, Appellee, v. Samuel Lee, Appellant.

**Malicious Prosecution:** ELEMENTS OF DAMAGES: *Distress of mind.*
　　In an action for malicious prosecution it was not error to permit plaintiff to show that on his arrest at his home his mother fainted or was prostrated by the shock, and that plaintiff thereby suffered distress of mind.

*Same.* It was competent for plaintiff to describe his mental suffering while in custody.

PLACE OF CONFINEMENT. It was not error to allow plaintiff to describe the place in which he was confined.

*Loss of social standing.* In an action for malicious prosecution, evidence that immediately after plaintiff's arrest he ceased to be invited to social entertainments at which he had formerly been a guest was admissible, without plaintiff showing that his arrest caused the loss of social favor.

*Indignities during confinement—Harmless error.* The admission of evidence that other prisoners called plaintiff by name, and asked him what he was doing there, was not prejudicial error.

WANT OF PROBABLE CAUSE: *Instructions.* In an action for malicious prosecution, instructions that the question of probable cause depended on whether an ordinarily prudent and careful man, under the facts as they appeared to him, in the exercise of reasonable care to ascertain the facts, would be justified in believing the plaintiff committed the crime, and that if defendant did not use the means which an ordinarily careful and prudent man would exercise, under like conditions, to ascertain the facts connecting plaintiff with the crime, the proceedings were instituted without probable cause, did not impose too high a degree of care on defendant.

EXEMPLARY DAMAGES: *Instructions.* In an action for malicious prosecution an instruction on exemplary damages that if defendant in instituting the alleged malicious prosecution, was actuated solely by feelings of personal malice against the *"defendant,"* etc., was not so misleading on account of the mistake in using the word "defendant" for "plaintiff" as to require reversal.

PLEADING: *Mitigation.* Under Code, section 3593, providing that, in actions for damages to person, character or property, no mitigating circumstances shall be proved unless specially pleaded, defendant in an action for maliciously prosecuting plaintiff on a charge of attempting to murder defendant's daughter, could not, without special plea, give evidence of statements by plaintiff that the daughter was unchaste, as bearing on plaintiff's social standing, loss of which was an element of damage alleged.

EVIDENCE: *Truth of charge.* Evidence of such statements had no tendency to show that plaintiff was the person guilty of making the assault on the daughter.

*Rebutting malice.* The statements were not admissible to rebut presumption of malice in causing plaintiff's arrest, its being to explain malice, and ont to disprove it, there being no evidence, either, that said statements were reported to defendant.

**Review on Appeal:** MISCONDUCT OF COUNSEL: *Ruling on exception.* Where counsel's statement of what he expected to prove by a witness presented several propositions and the court merely said "The latter part is admissible," and both parties excepted, no ruling was presented for consideration.

NON-PREJUDICIAL ERROR—HEARSAY. In an action for malicious prosecution testimony of plaintiff's father as to his statements to the sheriff on the night of plaintiff's arrest, which was the same night the crime for which he was arrested was committed, as to plaintiff's whereabouts on that evening was not so clearly prejudicial as to require reversal.

*Appeal from Henry District Court.*—HON. W. S. WITHROW, Judge.

FRIDAY, APRIL 11, 1902.

ACTION for damages for malicious prosecution. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Blake & Blake* and *Palmer & Kopp* for appellant.

*McCoid & Finley* for appellee.

WEAVER, J.—The plaintiff alleges that on October 9, 1899, the defendant made complaint to the sheriff of Henry county charging plaintiff with the crime of assault with intent to commit murder; that, acting upon such charge, the sheriff, without writ arrested plaintiff at his home at a late hour of night, and took him before a magistrate, where the defendant also appeared, and swore out and filed an information formally charging plaintiff with said alleged crime; that upon such charge, being unable to give bail, plaintiff was cast into jail until the following day, when he was released upon bond; that, against plaintiff's objections, said cause was continued.

from time to time until October 23, 1899, when it was called for hearing, and the defendant not appearing to prosecute said charge, and there being no evidence against him, he was discharged, and the prosecution dismissed. He further says that the accusation made by the defendant was false, malicious, and without probable cause; that in defending against the same he was put to much expense and loss of time, and was made to suffer much pain in body and mind, and was injured in reputation and social standing, for all of which he asks damages. The defendant answers in denial.

The evidence shows, without material contradiction, the charge of crime, the arrest, the incarceration in jail, the adjournment of the hearing, the defendant's failure to appear as a witness, and the final discharge of the plaintiff by the magistrate, substantially as alleged in the petition. The evidence in the record has no tendency to show plaintiff guilty of the crime charged against him, but defendant insists that in instituting the prosecution he acted without malice and with probable cause. These being matters for the consideration of the jury, the verdict is conclusive, unless we find substantial error in some of the rulings made or proceedings had in the trial court. We therefore proceed to a consideration of the errors assigned and argued by counsel.

I. The plaintiff was permitted to show that at the time of the arrest he was living at home with his parents; that his mother was in poor health; and that upon the sheriff making known his purpose to arrest her son she fainted or was prostrated by the shock, and that plaintiff was thereby caused to suffer great distress of mind. It is urged that this ruling, in effect, permits the plaintiff to recover damages for injuries sustained by his mother. We do not so view it. Plaintiff's recovery must be restricted, of course, to the injuries suffered by himself. But the principal basis of recovery in most actions of this kind is mental suffering and anguish arising from the wrongful charge and arrest, and,

if the arrest be made in the presence of one's family or
friends bringing him into shame and humiliation before
them, it is a proper matter to be considered as bearing upon
the pain inflicted upon him. If, then, in addition to the in-
dignity of his arrest, he sees, as the effect of such act, his
wife or mother fall in a faint, and he is forced to leave her
in such prostrate and suffering condition, we see no reason
why this increased pain, which naturally follows such a sit-
uation, shall not be an element in assessing his damages, if
he is found entitled to recover at all. It is not a recovery of
damages sustained by the mother that is asked or allowed,
but the condition and sickness of the mother, from whom
plaintiff was forcibly removed, are among the facts and cir-
cumstances immediately surrounding the arrest, and were
properly shown, as bearing upon the suffering which he has
been made to undergo on account of his alleged wrongful
prosecution.

II.  Plaintiff was also allowed, over defendant's objec-
tion, to describe to the jury the place in which he was con-
fined, the manner in which his mind was affected by the ex-
perience, and to state that certain other prisoners
called him by name, and asked him "What
in hell are you doing here?" It may be
conceded that so much of this testimony as repeats
what was said to him by a fellow prisoner is
incompetent and immaterial, but we cannot conceive it pos-
sible that it could have had any influence upon the verdict
of the jury, or that the error in admitting it was prejudicial.
The facts that plaintiff was placed in the jail, and that he was
hemmed in by iron bars, and surrounded by the usual gloomy
and depressing features which are characteristic of prisons,
were proper to be called to the attention of the jury. Not
that any neglect or any abuse of power by the sheriff would
be chargeable to the defendant. Such we do not understand
to be the purpose or effect of the testimony. No such abuse
or neglect is alleged, but it must be presumed that in causing
plaintiff's arrest on charge of a grave crime defendant con-

templated his possible or probable confinement, and that in such confinement he would have the surroundings and receive the treatment and fare which are inseparable from prison experience. If, for instance, the sheriff instead of putting plaintiff in jail had entertained him at him own home, as a trusted friend or guest, it would have been a fact which the defendant could properly have shown in mitigation of damages. Why, then, should the jury not be made acquainted with the usual and necessary characteristics of the entertainment which a jail affords, in order that they may determine for themselves whether plaintiff's detention there can reasonably be said to have occasioned the discomforts of mind or body of which he complains? The cases upon which appellant relies as supporting this exception go simply to the extent of saying that a person who wrongfully institutes a criminal prosecution cannot be held liable for the wrongful acts of the magistrate or other official over whom he has no control in respect to the prosecution thus begun. The rule of these cases is manifestly correct, but it is not applicable to the facts under consideration.

In this same connection may be taken up the objections raised to plaintiff's attempt to describe his mental suffering while in custody. We know of rule of law which prohibits such testimony. It is true, perhaps, the jury may properly be left to infer such sufferings from the circumstances of his situation, and it is also true that the average witness finds it difficult to describe mental conditions in apt terms. But does it follow that such description, when made, is not proper evidence. If a man who has been wrongfully prosecuted for crime feels a sense of shame and humiliation that such a charge should be laid at his door, or that he has been disgraced in the eyes of his neighbors and friends, or is tormented with fear that his incarceration in jail may bring sorrow and disgrace to his home, we think he should be permitted to say it. There was no error in the ruling here complained of.

III.   Many of the assignments of error are based upon the ruling of the court in refusing to permit testimony tending to show statements made by the plaintiff reflecting upon the chastity of defendant's daughter for the alleged attempt to murder whom the plaintiff was arrested.

The questions were first propounded to plaintiff upon cross-examination.   We think they were not relevant to anything he had said in his direct examination, and were properly ruled out upon that ground, if no other.   It is said this should have been admitted as having a bearing upon plaintiff's social standing, which he claims was injuriously affected by his arrest.   If offered for this purpose, then it was an attempt to mitigate damages, and, under a familiar statutory rule, matters in mitigation must be specially pleaded. Code, section 3593; *Hanners v. McClelland,* 74 Iowa, 318. The same line of testimony was offered upon direct examination of witnesses for the defendant and excluded, and we think correctly.   Proof that plaintiff had slandered the defendant's daughter by insinuations or charges against her character for chastity could have no tendency to point him out as the person who attempted to shoot her, nor is it a circumstance which could afford reasonable cause to so believe.   If this testimony was further intended, as was claimed, as an explanation of the defendant's attitude toward the plaintiff prior to the arrest, and to rebut any presumption of malice on his part, it is to be observed that the offer of the evidence is not accompanied by any offer to show that such conversations were reported to the defendant, or that he knew anything of them at the time in question.   Moreover, if it should be held that such explanations are of any avail, defendant had the benefit of them in being himself permitted to testify that plaintiff had made substantially the same statements to him in person.   But, giving such testimony all its legitimate weight, it tends, at most, to explain the cause of defendant's malice, if

any, and not to disprove its existence. The bearing of the offer upon the question of plaintiff's social standing we have already discussed.

IV. Mrs. Lee, wife of the defendant and mother of the young lady who was alleged to have been murderously assaulted, was a witness, and testified to plaintiff's calling at her home in January, 1899, and to certain conversations had between him and her husband. In the course of her testimony the following colloquy occurred (we quote from the abstract): "Q. Well, what did he say? Give the conversation between them. (Objected to as incompetent, irrelevant, and immaterial.) Mr. Blake: I offer to prove by this witness that at this time and place, and in this conversation, that the question of the veracity of Flossie Peterson and Jennie Lee about some things that were talked about was mentioned, in which Mr. Flam said that what they had said was not true, and they would not say so; when Mr. Lee replied that the children were truthful; that he had tried to raise them right, and he believed what they told him; that thereupon Flam flew into a passion, and said: 'Yes; you have raised them right. Every hired man you have has done just as he pleased with Jennie, and I got her in the family way, and helped her to get rid of it. I paid the doctor bill for it,'—and thereupon Mr. Lee told him to go, or words to that effect, and he arose and opened the door, and told Flam to get out, and as Flam went out the door he said, in substance, 'I will get even with you and with her.' (Objected to as incompetent, irrelevant, and immaterial.) The Court: The latter part is admissible. (Both parties except.)" This, as will readily be seen, presents no definite ruling for our consideration. The objection to the offer was neither sustained nor overruled. The court stated that the "latter part" of the offer was proper, but just how much of it may be included in that designation is not explained. Defendant's counsel do not appear to have pressed the matter further, though the remark of the court left it open to them

to proceed by proper interrogation of the witness, and develop her answers so far as admissible. The offer contained several distinct propositions, some of which, at least, were clearly immaterial and an offer in bulk should not be sustained where any part of it is objectionable. *Hidy v. Murray,* 101 Iowa, 69.

V. Plaintiff's father testified to being at home when the arrest of his son was made, and that plaintiff was in bed when the officers arrived. Error is assigned because in the course of this testimony the witness was permitted to relate the conversation between himself and the sheriff in reference to the plaintiff's whereabouts that evening, which was the same evening on which the alleged shooting occurred. Assuming the evidence to be immaterial or hearsay, it is not so clearly prejudicial as would justify us in disturbing the verdict. At the time this conversation took place the sheriff was acting on the request of the defendant and without warrant, and the circumstances accompanying the arrest, so far as they had any relevancy to the suspicion of plaintiff's guilt of the crime charged, were open to the inquiry of defendant before he filed the information. We do not say as a matter of law that it was his duty to make such inquiry, but whether as a reasonable man he ought to have made it was a proper question for the jury.

VI. Appellant assigns error upon the ruling of the district court in admitting the evidence of plaintiff to the effect that after his arrest he immediately ceased to be invited to houses and social entertainments at which he had up to that time been accustomed to be a guest. The fact that he does not, in express terms, show the cause of the alleged loss of social favor, does not render the evidence objectionable. The witness could not be expected to say as a matter of actual knowledge that the change, if any, in the attitude of society toward him, was the result of his criminal prosecution; but if, as he claimed, such change was coincident with that event,—an event which, in the nature of

things, tends to the loss of social standing,—the jury may properly be left to say, in view of all the facts, whether the relation of cause and effect was established.

VII.   The remaining errors assigned are based upon certain instructions to the jury.   After defining "probable cause" in the usual and approved terms, the court in the fourth paragraph of its charge added: "It does not depend upon the question whether or not the person so prosecuted was actually guilty of the crime, but whether or not an ordinarily prudent and careful man, under the facts as they appeared to him, *in the exercise of reasonable care to ascertain the facts,* and from the knowledge or honest belief of the facts then had, would be justified in the honest belief that a crime had been committed, and the person accused was guilty of such crime."   In the fifth paragraph of the charge the court said that if defendant, in beginning the prosecution, *"did not use the means which an ordinarily careful and prudent man would exercise, under like conditions, to ascertain the facts connecting the plaintiff with the crime* alleged to have been committed, and if you find from the facts and circumstances as they at the time were known or appeared to the defendant that he was not justified in honestly believing that the plaintiff had committed the crime for which he was afterwards arrested, then such proceedings would have been commenced without probable cause."   The same thought is embraced in the sixth paragraph.   It is said that the language above italicized imposes too high a degree of care upon a person beginning a criminal prosecution.   We think the criticism is not well founded.   All that is required of an informant in criminal proceedings by this instruction is that he shall exercise the care of an ordinarily prudent man.   This is not too high a standard of action for the government of one who is about to institute a prosecution which, if not well founded, may work incalculable injustice to an innocent person.   The rule an-

nounced by these instructions we regard as in harmony with the well-established principles of the law in reference to actions for malicious prosecutions.   *Walker v. Camp,* 63 Iowa, 630.

In the twelfth paragraph of its charge the court, in stating the grounds upon which exemplary damages might be allowed, made use of the expression: "If you find that in the commencement of such [criminal] proceedings the defendant was actuated solely by feelings of personal malice against the defendant," etc.   Complaint is made of this language.   The court evidently intended to use the word "plaintiff" where the word "defendant" is last employed in this sentence, but the mistake is one which could not have misled the jury.   It should be remembered, too, that the language which is above quoted refers to the criminal proceeding, and in that proceeding the person who is here plaintiff was there defendant, and with that in mind the use of the latter term by the trial court, while probably inadvertent, was not inappropriate.   In the case of *Rich v. Moore,* 114 Iowa, 80, where the word "plaintiff" being mistakenly used for "defendant," was held reversible error, the instruction as written was calculated to mislead the jury upon the rule there being considered.   The real meaning of the court in this case is too apparent to prejudice either party.   Upon the whole record, we think the case was fairly tried, and the verdict has sufficient support in the evidence.   The judgment of the district court is AFFIRMED.