C. D. VANDELL, Administrator, Appellant, v. FRED W. ROEWE et al., Appellees.

No. 46047.

NOVEMBER 24, 1942.

E. E. Poston, of Corydon, and A. C. Carmichael, of Pocahontas, for appellant.

Hallagan, Fountain, Steward & Cless, of Des Moines, and Gilchrist & Gilchrist, of Laurens, for appellees.

MILLER, J.—Plaintiff is the administrator of the estate of Dwight W. Vandell, deceased. His petition asserts that death resulted June 12, 1940, by reason of injuries received on May 1, 1940, arising out of an automobile accident; deceased was a guest in the automobile of defendant Fred W. Roewe, which was being driven by defendant Henry Roewe in reckless and wanton disregard for the safety of decedent; the collision occurred southeast of Laurens, Iowa, on a county road, near a railroad crossing; defendant was driving on the left-hand side of the road at an excessive rate of speed, exceeding 60 miles per hour; he saw the lights of an approaching car and failed to yield one half of the traveled portion of the road. Defendants' answer included a general denial of all allegations of recklessness. Trial was had to a jury, resulting in a directed verdict for de-

fendants at the close of plaintiff's evidence. Plaintiff appeals, asserting five assignments of error.

■ I. Plaintiff's first assignment of error complains of the sustaining of objections to questions propounded to Harry O. Brown, a sergeant of the state highway patrol, whereby inquiry was made as to statements by defendant Henry Roewe to Brown while Brown was investigating the accident in his official capacity. The objection was that the statements were confidential and privileged under the statute. (Section 5020.11, Code, 1939.) The ruling was proper. McBride v. Stewart, 227 Iowa 1273, 1277, 290 N. W. 700.

■ Error is also assigned in this division for the sustaining of objection to a question whereby Brown was asked his opinion as to what he thought would be a safe rate of speed for one to drive over the crossing. The ruling appears to have been proper. Roberts v. Koons, 230 Iowa 92, 95, 296 N. W. 811. In any event, there was no offer of proof and prejudice will not be presumed. Pearson v. Butts, 224 Iowa 376, 388, 276 N. W. 65.

■ II. The second assignment of error complains of the sustaining of objections to questions propounded to plaintiff whereby inquiry was made regarding a conversation about a possible settlement of plaintiff's claim by defendants' insurance company. Only such part of the conversation as was relevant, competent, and material to the issues being tried could be admitted. Kuhn v. Kjose, 216 Iowa 36, 38, 248 N. W. 230; Rutherford v. Gilchrist, 218 Iowa 1169, 255 N. W. 516. The record is not clear as to the offer of this testimony. The only conclusion we can come to is that it was offered in bulk. Since some of the testimony was clearly improper and subject to the objections made thereto, the offer as made was properly refused. Hidy v. Murray, 101 Iowa 65, 69, 69 N. W. 1138; Flam v. Lee, 116 Iowa 289, 297, 90 N. W. 70, 93 Am. St. Rep. 242; Mosnat v. Chicago & N. W. Ry. Co., 114 Iowa 151, 152, 86 N. W. 297; Allen v. Travelers Protective Assn., 163 Iowa 217, 226, 143 N. W. 574, 48 L. R. A., N. S., 600.

■ III. The third assignment of error complains of the sustaining of objection to a question whereby Sergeant Brown was asked to repeat what Robert Maher said to Brown in the presence of Henry Roewe as to the speed of the car. The ob-

jection was that it called for hearsay testimony. Plaintiff contends that the testimony should have been admitted under the rule announced in Doherty v. Edwards, 227 Iowa 1264, 290 N. W. 672. We seriously doubt that proper foundation was laid to bring the case within that rule. However, there was no offer of proof and prejudice will not be presumed. Pearson v. Butts, supra.

IV. Plaintiff's fourth and fifth assignments of error challenge the ruling on defendants' motion for a directed verdict, the claim being that the jury should have been permitted to determine whether Henry Roewe was reckless at the time of the collision. We find no merit in the contention.

Plaintiff's evidence showed that the collision occurred near a railroad crossing, the position of the cars after the accident, and the damage done to the cars. The front end of each car was badly damaged, indicating a head-on collision. Defendants' car had been traveling south and stopped, headed south, on the east side of the road north of the crossing. The other car, the Hurley car, had been traveling north and stopped on the tracks, headed north, on the east side of the road. Mrs. Hurley testified that her husband was driving around 30 miles an hour, with his lights on; when they came to the railroad track, she saw a light and that was all she remembered. It was about 9 p. m. Her husband did not survive the accident. Merle Sears testified that Henry Roewe stated he was going "about fifty" when he left the corner (which is 775 feet north of the crossing), and he applied his brakes and slowed down as he approached the crossing. Plaintiff testified that Henry Roewe told him that he "thought they were going around 35 miles an hour." Sergeant Brown investigated the scene of the accident and described it in detail. Various pictures were taken and are in evidence. But, aside from admissions of Henry Roewe as to his speed, there is no direct evidence as to his operation of the car. Plaintiff contends that reckless operation is shown by the physical facts found after the collision had occurred. We cannot agree.

The photographs in evidence show the crossing where the collision occurred. Brown testified:

"There was a gradual incline and decline. As to its percentage, I just don't know, but it is quite an abrupt incline."

O. P. Malcolm made various measurements as to the change in elevation on both sides of the crossing, and testified:

"The drop of the surface of the roadway below the rails at the point 200 feet north of the crossing is four and one-half feet; at 250 feet that would be four and three-quarters and at 300 feet the drop is just five feet. Going south from the crossing the drop of the surface of the roadway below the rails is substantially the same in each of those distances until you get to 300 feet south and that is about five feet, four inches."

From this testimony and the photographs it is obvious that each car would be hidden from the other, from the time each was within 300 feet of the crossing, until it was almost upon the tracks. This is also demonstrated by Mrs. Hurley's testimony that the light from defendants' car was seen just before the crash. There is no direct evidence that Henry Roewe saw the Hurley car before the accident. The circumstantial evidence indicates that he could not see it until very near the tracks. The allegation that he saw the Hurley car approaching and continued to drive on the wrong side of the road is not supported by the record.

As to speed, the testimony above set forth indicates that Roewe had been driving about 50 miles per hour when 700 feet from the fatal crossing and that he slowed down to about 35 miles per hour. Plaintiff argues, however, that the damage to the cars proves that the speed was much greater. We are not so persuaded. There is testimony that the front ends of both cars were badly damaged and that the damage to each was about the same. There is a photograph of the Hurley car but none of defendants' car. The photograph shows damage to the bumper, radiator grill, headlights, front fenders, and windshield; little damage is shown back of the radiator. Mrs. Hurley estimated the speed of their car at 30 miles per hour and Henry Roewe estimated his speed at about 35 miles per hour. The impact at such speeds would be the equivalent of a moving car hitting a stationary one at 65 miles per hour, if the collision was head-on as plaintiff contends. The damage shown is consistent with the speeds as estimated and is insufficient of itself

to warrant a finding of the excessive speed alleged in the petition.

The only evidence that Henry Roewe was driving on the wrong side of the road is that regarding the position of the cars, above referred to. This would indicate that the cars collided on the east side of the highway as the Hurley car was crossing the tracks and defendants' car was approaching the crossing.

In Reimer v. Musel, 217 Iowa 377, 381, 251 N. W. 863, 865, we state:

"The undisputed evidence shows that the concrete flume was approximately 10 feet wide. So at the time these two cars came to rest after the collision, the Musel car, being about 4 feet east of the flume, and the Reimer car 6 to 8 feet west of the flume, they were at that time better than 20 feet apart. And no negligence on the part of the appellant is shown by the location of the cars. Where they were when they came to rest proves nothing whatever with reference to their location at the time of the collision."

While the position of the cars herein may be more indicative than in the Reimer case, here, as there, such evidence is wholly insufficient to prove what was done as the cars approached the crossing. In the Reimer case there was testimony as to the location of broken glass on the highway, skid marks, and the like. There is no such evidence herein, merely the position of the cars after they came to rest.

We have held that the fact that a collision occurred on the left-hand side of the road is only prima facie evidence of negligence. Rainey v. Riese, 219 Iowa 164, 167, 257 N. W. 346. We are not concerned here with the distinction there made between prima facie evidence of negligence and negligence per se. We are satisfied that, under our repeated pronouncements, mere evidence that a collision occurred on the left-hand side of the road, without more, would not support a finding of recklessness under the guest statute (section 5037.10, Code, 1939). Wilson v. Oxborrow, 220 Iowa 1135, 264 N. W. 1; Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635; Brown v. Martin, 216 Iowa 1272, 248 N. W. 368.

Plaintiff emphasizes that the evidence must be viewed in the light most favorable to him. Such is the law. But even so, the record is insufficient to present a question for the jury to pass upon.

The judgment is—Affirmed.

All JUSTICES concur.