**Minnie M. GUYER, Appellant,**

v.

**Carol E. ELGER, Administratrix of the Estate of George Elger, Deceased; and Carol E. Elger, Administratrix of the Estate of Sylvia E. Elger, Deceased, Appellees.**

**No. 15015.**

United States Court of Appeals Eighth Circuit.

Nov. 9, 1954.

Writ of Certiorari Denied Jan. 31, 1955.

See 75 S.Ct. 342.

Harry E. Wilmarth, Cedar Rapids, Iowa (Matthew H. Czizek, Robert M. Czizek, Dubuque, Iowa, Caryl W. Garberson, Cedar Rapids, Iowa, Czizek & Czizek, Dubuque, Iowa, and Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on the brief), for appellant.

E. Marshall Thomas, Dubuque, Iowa (Edward A. McDermott and O'Connor, Thomas, McDermott & Wright, Dubuque, Iowa, on the brief), for appellees.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

Minnie M. Guyer, a citizen of Iowa, on February 5, 1953, at about noon, while driving her Cadillac automobile east on Highway 64 toward Maquoketa, Iowa, had a collision with a Ford automobile traveling west and being driven by George Elger, of Chicago, Illinois, who was accompanied by his wife. The cars met head on at a point on the highway about four miles west of Maquoketa. The Elgers were killed. Mrs. Guyer was alone in her car and was the only surviving witness of the accident. She was seriously injured.

The collision was due to one of two causes: either Mrs. Guyer had suddenly turned her car into the north lane of the highway on which the Elger car was

traveling west or George Elger had suddenly driven his car into the south lane of the highway on which the Guyer car was traveling east. The paved portion of the highway was 18 feet in width. If each of the cars had remained in its proper lane, no collision could have occurred.

The administratrix of the estates of the Elgers, a citizen of Illinois, brought this action against Mrs. Guyer to recover damages for their deaths upon the claim that Mrs. Guyer had negligently driven her car into the north lane -of the highway and caused the accident. Mrs. Guyer denied that she had been negligent, and asserted that George Elger had negligently turned his car into the south lane of the highway, thus causing the collision. She counterclaimed for her damages.

The issues were tried to a jury. At the close of the evidence, the defendant (appellant) moved for a directed verdict in her favor on the ground that the plaintiff (appellee) had not made a case for the jury. The motion was denied, and the jury returned verdicts for the plaintiff, upon which judgment was entered. The defendant moved for judgment notwithstanding the verdicts. Her motions were denied, and she has appealed from the judgment.

The sole question for review is whether, under the applicable law of Iowa, the plaintiff's evidence was sufficient to make the issue of liability one for the jury.

The defendant's testimony was: That she left her home just outside of the village of Nashville, Iowa, approximately half a mile south of Highway 64, at about twenty minutes before noon; that she entered the highway a mile east of the Nashville road; that it was a misty morning and was drizzling; that she had the windshield wipers of her car going; that the highway easterly from the point where she entered it curves through a rock cut; that she proceeded through this cut where the highway straightens out and slopes slightly to the east; that, as she passed through the cut, she observed a car approaching from the opposite direction; that she was driving on the south side of the highway, south of the black line marking its center; that the car approaching her seemed to be traveling at about the same speed as her car, 50 to 55 miles an hour; that each car was on its own side of the highway; that: "He [the driver of the approaching car] kept coming west and I kept going east, and we continued that way until we were quite close together and then all of a sudden he just like that (indicating) came right over. I mean he would have turned to his left and come at an angle right at me. He was angling from the north to the south side of the road. He was heading southwest. I couldn't tell you in feet how far ahead of me he was when he angled into my lane. I know just how long it took for him when I saw him starting across. I slammed on the brakes and I said, 'Oh, Oh, Oh' and he hit me. I remember distinctly saying 'Oh' three times, and that is everything that I remember. I don't know whether my car responded to the brakes. I know that I didn't apply the brakes but I slammed them on instinctively, and I don't think that I had time for the brakes to act on the wheel, because it just quivered and outside of that I don't know. There wasn't time to do anything. I was traveling on the south side at that time. I did not see any pool of water any place on the highway that day. Nothing affected my operation of the car. I am not conscious of whether I pulled my car to the left at the time I applied my brakes. I remember slamming on the brakes and saying those three 'Oh's' and the car quivered. I slammed on the brakes so hard that it may have pulled it to the right or I may have pulled it to the left, but I am not conscious of it. The brakes were in good condition because I had relined them that summer and they had been set up and re-adjusted either in October or November."

The evidence on behalf of the plaintiff was necessarily circumstantial. There

was virtually no dispute about the position of the cars after the accident. The cars came to rest about 12 feet apart. The Ford was east of the Cadillac and completely off the north edge of the traveled portion of the highway, facing in a northeasterly direction. The Cadillac— much the heavier of the two cars (3,980 pounds as against 3,110 pounds)—was facing slightly west of north, blocking the north lane of the highway. All of the Cadillac except the rear bumper and a small portion of the trunk was north of the middle of the highway. The front end of the Cadillac was on the embankment or north shoulder of the highway.

There was evidence that "Most of the mud and stuff, that was knocked off under the cars, was underneath the Cadillac" and was north of the center line of the highway. There was evidence that it had rained intermittently all morning and was raining at the time of the accident, and that there was a pool of water 2 or 2½ inches deep on the highway, about 30 feet west of the Cadillac; that the pool covered the pavement and extended west about 24 feet. There was no evidence with respect to tire marks on the pavement (possibly due to rain) and no evidence of the existence of any obstruction or condition of the highway east of the point of collision which could or might have caused the driver of the Ford car suddenly to turn his car from the north lane into the south lane of the highway. On the other hand, there was evidence that a short distance west of the point of collision there was the pool of water 2 to 2½ inches deep on the highway, which could or might have caused an eastbound car to swerve from the south lane into the north lane. The disconcerting effect of driving a car at high speed through a pool of water on a highway has been experienced by most motorists. It seems to us that, from a practical point of view, the facts and circumstances disclosed by the evidence, viewed in the light most favorable to the plaintiff, are more consistent with the hypothesis that the driver of the Cadillac suddenly swerved into the north lane of the highway than with the hypothesis that the Ford suddenly veered into the south lane.

Had the Ford, traveling southwest, as the defendant testified, struck the front of the Cadillac in the south lane of the highway, one reasonably might believe that the Cadillac would necessarily have been turned toward the south, and not toward the north, and would have come to rest either in the south lane of the highway or south of that lane off the highway, and that most of the debris dropped from the cars upon impact would have been in the south and not in the north lane.

Counsel for the defendant, however, are convinced that if this case was before the Supreme Court of Iowa, it would hold that the plaintiff's evidence was insufficient to sustain the verdicts and judgment, and would reverse. Counsel for the plaintiff are as firmly convinced that the Supreme Court of Iowa would hold the evidence sufficient to make the issue of liability one for the jury, and would affirm. Counsel on both sides are Iowa lawyers. They have at least demonstrated that the question of the sufficiency of the evidence is a debatable one.

The case was tried before Judge Graven, of the Northern District of Iowa, who, previous to his appointment to the federal bench, had been an experienced State District Judge in Iowa. His considered views are stated in a memorandum accompanying his order denying the defendant's motions for judgment notwithstanding the verdicts. We quote the following excerpts from this memorandum:

"The Iowa Supreme Court has followed two rules in connection with circumstantial evidence in civil cases. For a considerable period of time it followed the so-called 'exclusion of every other hypothesis rule' frequently referred to as the strict rule as contrasted with the so-called 'more reasonably probable rule' frequently referred to as the liberal rule. Then for a period of time that

Court wavered between the two rules. However, in recent years that Court has consistently followed and applied the latter rule.

"Ever since the Iowa Supreme Court handed down its decision in the case of Smith v. Darling & Co., 1952, 244 Iowa 133 [56 N.W.2d 47], the scope and the implications of the opinion and the holding in that case have been a subject of discussion among those having to do with Iowa motor vehicle collision litigation. In civil jury cases involving circumstantial evidence it was and is argued to the trial courts in Iowa by counsel contending for submission that in addition to following the liberal rule as to circumstantial evidence the Iowa Supreme Court has manifested an increasingly liberal attitude in favor of submissibility and that the case of Smith v. Darling & Co., is indicative of that attitude. However, counsel arguing to those courts against submission argue that too much is claimed by the opposing counsel for the holding and the opinion of the Iowa Court in that case and that that case is distinguishable on the facts from the particular case under consideration and from other Iowa cases involving circumstantial evidence in civil cases.

\*    \*    \*    \*    \*    \*

"Fairly recently three different Iowa trial judges have been reversed by the Iowa Supreme Court for being too strict in the matter of submissibility in tort actions where the plaintiffs relied upon circumstantial evidence. Those reversals were in the cases of Smith v. Darling & Co., supra; Roller v. Independent Silo Co., 1952, 242 Iowa 1277, 49 N.W.2d 838; and Nicholson v. City of Des Moines, supra [Iowa, 1953, 60 N.W.2d 240].

"This Court is of the view that the trend of the decisions of the Iowa Supreme Court in civil cases in which circumstantial evidence is involved has been in favor of submissibility and away from the somewhat more strict views expressed and somewhat more strict attitude indicated in the earlier cases.

"While as heretofore noted, the question of submissibility in the present case is a close one, yet the Court is of the view that under the present state of the Iowa law the Iowa Supreme Court would hold that under the evidence in this case the question as to whether or not the defendant invaded the traffic lane of George Elger was properly one for jury determination."

Unless it can be demonstrated that Judge Graven clearly misconceived or misapplied the applicable Iowa law in reaching his conclusion that the plaintiff had made a case for the jury, the judgment must be affirmed. We again repeat what we said in National Bellas Hess, Inc., v. Kalis, 8 Cir., 191 F.2d 739, 741, relative to this Court substituting its judgment for that of a trial judge respecting a doubtful question of local law:

"This Court has repeatedly ruled that it will accept the considered views of a District Judge as to doubtful questions of local law. Many of the cases in this Court and the Supreme Court which support that rule will be found in the case of Buder v. Becker, 8 Cir., 185 F.2d 311, 315–316. In Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43, we said: 'The burden of demonstrating error is upon the Casualty Company. In a case controlled by local law, that burden is a peculiarly heavy one. This Court is not an appellate court of the State of Missouri and establishes no rules of law for that State. We have repeatedly said that, in reviewing doubtful questions of local law, we would not adopt views contrary to those of the trial judge unless convinced of error, and that all that this Court reasonably can be expected to do in such cases is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker,

8 Cir., 185 F.2d 311, 315, and cases cited. If a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse, even though we may think the law should be otherwise.' "

See, also, Kimble v. Willey, 8 Cir., 204 F.2d 238, 243; and compare Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F.2d 330, 336; Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859.

We have read and considered the opinions in the Iowa cases relied upon by counsel for the parties.[1] We shall not attempt any analysis or reconciliation of them in this opinion. We think that the cases of Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47, and Hackman v. Beckwith, Iowa, 64 N.W.2d 275, support the views expressed by Judge Graven. We note that in the Hackman case, the Supreme Court of Iowa said, at page 279 of 64 N.W.2d:

" * * * Practically all the debris came from appellants' truck, which some evidence shows careened on down the road from the point of collision to its final resting place. In any event, the deductions to be made from the positions of the vehicles as they come to rest after an accident, the tracks found on the roadway, and the location of dirt and debris from collisions, are ordinarily for the jury. Slabaugh v. Eldon Miller, Inc. [244 Iowa 29], 55 N.W.2d 528."

The fact that in the instant case there was an absence of evidence of tire marks would not, in our opinion, make this rule inapplicable.

Our conclusion is that Judge Graven reached a permissible conclusion, and probably the correct one, in determining that the issue of liability in this case was, under Iowa law, one of fact for the jury and not one of law for the court, and that his ruling in that regard was not induced by any misconception or misapplication of Iowa law.

The judgment appealed from is affirmed.

---

1. Reimer v. Musel, 217 Iowa 377, 251 N. W. 863; Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295; Potter v. Robinson, 233 Iowa 479, 9 N.W.2d 457; Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19;

In re Goretska's Estate, 234 Iowa 1080, 13 N.W.2d 432; Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47; Hackman v. Beckwith, Iowa, 64 N.W.2d 275.