Emil G. Draeger, appellant, v. Heckman-Reynolds Company, a copartnership, and K. E. Heckman and Robert Reynolds, members thereof, appellees.

No. 49072.

(Reported in 78 N.W.2d 851)

1260

October 16, 1956.

Alfred A. Beardmore, of Charles City, for appellant.

Zastrow, Noah & Smith, of Charles City, for appellees.

PETERSON, J.—On June 13, 1955, at about 11:40 a.m., plaintiff was walking north near the middle of the block across what is known as Hart Street in Charles City. Defendants had a contract with the city for improvement of the street. An employee was operating an earth-moving machine known as a turnapull.

Plaintiff testified he started across the street approximately 20 feet back of the machine. The turnapull is 32 feet 3 inches long and 10 feet 7 inches wide. The wheels are 5 feet 6 inches in diameter. Its maximum reverse speed is 3½ miles an hour. Hart Street is composed of two roadways with a parking area in the center. The south roadway, involved herein, is 16 feet wide. As plaintiff was crossing the street the turnapull started in reverse, in order to clear the pathway for a caterpillar moving into place just ahead. Plaintiff was almost across the street when he slipped, in getting on the parkway area, and fell under the left rear wheel of the machine. The wheel passed over him and he was seriously injured. The machine was stopped before the left front wheel passed over him. The District Judge submitted the case to the jury on two questions of negligence: failure to keep proper lookout, and failure to give warning as to intention to back up the machine. The usual instruction as to contributory negligence was given. The jury returned a verdict for defendants. Plaintiff filed motion for new trial, which was overruled, and he appeals on five alleged grounds of error.

I. The first allegation of error is appellant's objection to the court striking part of an answer of plaintiff to a question asked him on direct examination. The question, answer and motion to strike were as follows:

"Q. I see. Now, did you hear any warning sound that the Turnapull was going to back up? A. No, I might add that I thought he would have seen me from the side. I started to go across in front of him and then I changed my mind and went across in back of him because I thought if he would move he would go forward. (Defendants move to strike as the opinion and conclusion of the witness, voluntary statement, not called for by any question. Sustained, and Plaintiff excepts.)"

The question asked was answered when the witness answered "No". Thereafter, the answer of the witness was a voluntary statement and his conclusion, and in addition thereto was the statement of a thought or opinion not connected with any factual situation. The line as between an observation based on something the witness thinks is going to happen from what he can see, and

simply what he may have in his mind, is sometimes thin. 20 Am. Jur., Evidence, section 765; Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295; Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 29 N.W.2d 204; Marnan v. Chicago, Rock Island & Pacific Ry. Co., 156 Iowa 457, 136 N.W. 884.

A sensible basis for the distinction is that independent ideas and thoughts of the witness are not admissible, whereas if there is some factual basis upon which a thought can be based, an admissible situation is created. This has no reference to expert opinions, under proper qualification. The analysis of this question in Marnan v. Chicago, Rock-Island & Pacific Ry. Co., supra, is quoted with approval. In that case the witness testified he saw decedent walking from the curb toward the track and added the words " 'I thought he was going to stop'." On objection the latter clause was stricken. The court said at page 465 of 156 Iowa, page 886 of 136 N.W.:

"While the answer might well have been permitted to stand, we think the ruling was not erroneous. The witness does not say that he drew the inference of which he speaks from anything in the appearance, attitude, or movement of the deceased, or state any fact to indicate that this expression, 'I thought he was going to stop,' refers to anything else than his own mental process. Had he said that 'Stender acted as if about to stop,' or that 'he hesitated and looked around as if about to stop,' or other words of similar import, it would come much nearer to admissibility under the rule rendering competent testimony which partakes of conclusion with reference to the personal appearance of one whose conduct is under inquiry. But the witness does not say this or its equivalent, nor was he further interrogated to bring out an explanation of his statement. The exception taken cannot be sustained."

In 20 Am. Jur., Evidence, supra, the following statement is made: "It is a fundamental principle of the law of evidence as administered by our courts, both in civil and criminal cases, that the testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial of a cause, must be confined to statements of

concrete facts within their own observation, knowledge, and recollection—that is, facts perceived by the use of their own senses—as distinguished from their opinions, inferences, impressions, and conclusions drawn from such facts."

In Vandell v. Roewe, supra, we said at page 898 of 232 Iowa, page 296 of 6 N.W.2d: "Error is also assigned in this division for the sustaining of objection to a question whereby Brown was asked his opinion as to what he thought would be a safe rate of speed for one to drive over the crossing. The ruling appears to have been proper."

We have held when a witness expresses an opinion the matter of its being received is largely within the discretion of the trial court. In Knaus Truck Lines v. Commercial Freight Lines, supra, at page 1368 of 238 Iowa, page 210 of 29 N.W.2d, we said: "Plaintiffs asked their witness Wilcoxon, 'Q. Based upon your judgment or judging from your experience as a truck driver, and traveling that kind of a highway, what course would you say * * * the Merchants Transfer Company took or could take after they saw this highway blocked?' * * * However, we are inclined to hold the ruling *was not an abuse of discretion.*" (Emphasis ours.) We hold the ruling of the court was correct, and within his discretion.

II. The second and third errors urged by appellant pertain to the obligation on the part of defendants to erect barricades or warning signs. The court withdrew from the consideration of the jury the allegation of negligence in plaintiff's petition concerning this situation. Objection was made to failure of the court to instruct on this point.

There are certain obligations upon a municipality, or a contractor performing work for a municipality, to erect barricades or place warning signs, in connection with street improvements. If in the repairing of a street a hazardous situation is created so that traffic should not move upon the street, there is an obligation to place a barricade or warning sign at the end of the street, together with a red light during the darkness of night. If the condition of the street is such that there is no hazard involved along the street itself, the city or contractor has no obligation to place barricades or warning signs *along the*

*sides of a street.* This is especially true where the condition can be discovered by the exercise of due care. 25 Am. Jur., Highways, section 412; Ryan v. Foster, 137 Iowa 737, 115 N.W. 595, 21 L. R. A., N. S., 969; Conklin v. Lincoln Traction Co., 130 Neb. 28, 263 N.W. 674.

This is the situation in this case. The improvement on Hart Street, up to the time of the injury, was that two large turnapulls had been removing some earth from the surface of the street. We presume the work was preliminary to paving. As the earth was removed the machines were packing the street so that a smooth surface remained at all times. There was a small mound of loose dirt pushed up on each side. As far as the street itself was concerned there was no hazard. Pedestrians crossed it as in normal times. Plaintiff was a man 67 years of age and apparently vigorous and alert and was especially interested in the improvement, and in the use and movement of the earth-moving machinery. When the machines were working in another part of the city he had driven over to watch their operations. He lived close to Hart Street and on the morning of the accident came to the street at eight or nine o'clock and pointed out to the foreman the location of a new manhole near the intersection of Hart Street and Riverside Avenue. The evidence as given by plaintiff under cross-examination shows clearly that barriers and warning signs had nothing to do with his injury. His testimony as to this matter is not lengthy and appears in the record as follows:

"As I stepped off the south side of the street I observed the turnapull, it was standing there with the motor running, there was an operator on the turnapull. As I stepped out in the street I was behind the turnapull and I continued to watch it. I was behind it when it began to move back, about twenty feet. I yelled, and when I got to the loose ledges along the curb I slipped, and those big wheels cover a lot of ground quick, before I knew it I was under the wheel. I was about 20 feet back when the machine started back, and I started to step up with one step and I slipped. One step would have put me on the parking, before I could get back the thing happened. * * * Q. But you do remember hearing the motor rev up? A. Yes. I had an idea I

was about the middle of the machine when he started up that way; when I stepped up on this ledge I slipped."

The situation as depicted by plaintiff shows the reason for his injury was his foot slipped as he was stepping up on the parkway area in the street. He knew the machine was backing up and according to his own statement he was 20 feet back of the machine when it started.

The Nebraska case of Conklin v. Lincoln Traction Co., supra, at pages 29, 30 of 130 Neb., page 675 of 263 N.W. has analyzed this situation carefully: "Plaintiff testified to the absence of watchmen, barriers and signals of danger at the scene of the accident, but evidence of this nature did not prove actionable negligence of defendant. Where the necessary work of improving or repairing public pavements on streets and sidewalks is in open progress in broad daylight, watchmen, barriers and signals for the protection of the public are not required, since existing conditions at such a time give their own notice of danger, if any. McCarthy v. City of Boston, 266 Mass. 262, 165 N.E. 123; Morton v. Inhabitants of Frankfort, 55 Me. 46; City of Rock Island v. Gingles, 217 Ill. 185, 75 N.E. 468; Hunter v. City of Montesano, 60 Wash. 489, 111 P. 571, Ann. Cas. 1912B, 955. Cases applying a different rule where pedestrians without fault are exposed at night to dangers in streets and sidewalks in absence of lights, barriers or other warnings are not in point."

In connection with the question of the erection of barriers the trial court analyzed the situation properly and succinctly in his order overruling motion for new trial as follows:

"The plaintiff knew of the work being done on the street and the manner in which the work was being accomplished. The use of heavy machinery, if it resulted in a dangerous condition, or if it resulted in a dangerous position, was readily apparent, and did not involve any latent or hidden danger. No warning sign or barrier would have advised the plaintiff of anything that was not obvious or could have prevented his injury, unless it was a barrier that completely enclosed the street and physically restrained persons from entering thereon. Such a barrier would be impracticable and unreasonable under the circumstances of this case."

Under the evidence the court did not commit error in withdrawing the issue and failing to instruct concerning barricades or warning signs.

III. The fourth contention of appellant is that the trial court was obligated to instruct that plaintiff had a right to make such use of the street as was practicable. This is an affirmative instruction concerning a well-recognized and well-known rule. The general tenor of the court's instructions as a whole was that both plaintiff and defendants had a right to use the street, subject only to conditions created by repairing. There is no evidence plaintiff was denied the right to use the street. There was no issue in the case, either in the pleadings or evidence, as to the matter of use of the street. Defendants had a contract with the city for street improvement and they were using the street for this purpose. In accordance with his own testimony the plaintiff and other people used the street regularly. Plaintiff testified:

"Q. Now, Mr. Draeger, had you, at any time during the time that the construction work was going on, crossed the street prior to this time? A. Yes. Q. Several times? A. I imagine so, at Walnut Avenue and also on the east end. * * * Q. Now, have you, or were there other people around at different times? A. Yes. Q. A number of people? A. O, yes, five or six or seven. Q. I see. Now, had you seen other people cross the street? A. Yes. * * * Q. Now, at various times you were in the vicinity of Hart Street while this improvement was going on, is that right? A. Yes. Q. Were there a number of other people around at different times? A. Yes. Q. The normal activity of people was going on, is that right? A. Yes."

Under the evidence there was no prejudicial error in the failure of the trial court to give this instruction. Little v. Maxwell, 183 Iowa 164, 166 N.W. 760; Struebing v. Stevenson, 129 Iowa 25, 26, 105 N.W. 341. In Struebing v. Stevenson, supra, this court commented on the matter of instructions as follows: "But the appropriateness of instructions cannot be determined by the pleadings alone, for reference must be had also to the testimony introduced and to the issues actually contested upon the trial."

In connection with this contention as to error, appellant cites several cases which are not directly applicable to the question at issue. The principal case relied upon was Law v. Bryant Asphaltic Paving Co., 175 Iowa 747, 157 N.W. 175, 7 A. L. R. 1189. The facts are not comparable. A concrete mixer was involved in this case and a beam extended across the walk ordinarily used by pedestrians. When lowered it obstructed travel. At time of injury there was a severe snow storm in progress and plaintiff testified he could see or hear nothing indicating the machine was in operation. He proceeded along the walk and was struck by the beam and injured. Under such conditions it was proper for the court to instruct as to the rights of pedestrians. This is a completely different situation from plaintiff in this case starting across Hart Street in the middle of the block, with a large piece of machinery in plain view 20 feet away from him.

IV. The fifth contention for reversal is objection to that part of Instruction No. 9 stating as follows: "There would be no duty to warn persons who know or in the exercise of reasonable care should know that the machine was about to back up." We do not fully approve this wording. Since the court was submitting the case to the jury, it would have been advisable to submit this point somewhat as follows: "If you find from the evidence plaintiff knew, or in the exercise of reasonable care should have known, the machine was backing, no further duty to warn was necessary." There is a basis for the theory in the court's statement, properly worded, in several decisions of this court. Wilkinson v. Queal Lumber Co., 203 Iowa 476, 212 N.W. 682; Albrecht v. Waterloo Construction Co., 218 Iowa 1205, 257 N.W. 183; Elliott v. Des Moines Ry. Co., 223 Iowa 46, 271 N.W. 506; Arenson v. Butterworth, 243 Iowa 880, 54 N.W.2d 557.

According to the testimony of plaintiff, as quoted in Division II, he was 20 feet back of the machine when he saw it start to move backwards. There must have been some warning of which he was conscious in view of this testimony. The warning was either the noise of starting the machine or its movement in reverse. The jury could have found that plaintiff knew the machine was backing up. He was not caught unawares under

the rear of the machine. In Arenson v. Butterworth, supra, at page 886 of 243 Iowa, this court said: "It is true that one who knows all of which a warning could have informed him may not complain that none was given." Cases cited. In Wilkinson v. Queal Lumber Co., supra, we considered a somewhat similar situation and stated at page 479 of 203 Iowa, as follows:

"The fifth ground of negligence, that he approached the intersection without giving any warning, should not have been submitted to the jury. The appellee herself testifies that, long prior to her collision with the automobile, she saw and knew that the car was coming toward her, and nothing that could have been done would have brought this home to her any more forcefully than what she saw. If the driver of the automobile had sounded a horn or used any other signaling device, she would have had no more knowledge than she did have by actually seeing the car approaching her. We therefore think that the fifth ground of negligence should not have been submitted to the jury, as she had all the warning that the law intends she should have."

In view of the provisions of the remainder of Instruction No. 9 and in view of plaintiff's testimony as shown in Division II, we hold plaintiff suffered no prejudice by inclusion of the sentence in the center of the instruction.

Appellees argue at some length in their Brief and Argument as to failure of the court to direct a verdict on the ground of contributory negligence. We will not consider the matter, except to say the trial court correctly submitted the case to the jury.

We find no prejudicial error, and the order overruling motion for new trial is affirmed.—Affirmed.

All JUSTICES concur.