## CHICAGO, M. & ST. P. RY. CO. v. HOLVERSON.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1920.)

No. 5465.

1. Damages ⬅169—Evidence as to habit of drinking intoxicants is relevant.
   In an action for personal injuries, cross-examination of plaintiff as to his habit of using intoxicating liquors, which has a bearing on his expectancy of life and might explain some of the symptoms he claimed resulted from the injury, is relevant, and sustaining objections thereto was error.

2. Damages ⬅154—Habit of using intoxicants may be shown, though not pleaded in answer.
   In an action for personal injuries, the defendant can show plaintiff's habit of using intoxicating liquors, which affected his life expectancy, under the general issue, without specially pleading it.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Damages ☞216(2)—Instructions as to injured spine held not authorized by evidence.**

In an action for personal injuries, a statement in the charge that, if the jury found that an X-ray picture did not show a fracture of a vertebra, as claimed, the question still remained whether the accident caused an injury to plaintiff's spine, was erroneous, where there was no evidence to show an injury to the spine, except the photograph; plaintiff's testimony as to pains in his back not showing an injury to the spine, rather than to nerves or muscles of the back.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action by John Holverson against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

John N. Hughes, of Cedar Rapids, Iowa (Charles R. Sutherland and Willis J. O'Brien, both of Cedar Rapids, Iowa, on the brief), for plaintiff in error.

F. A. O'Connor, of Dubuque, Iowa (T. H. Goheen, of Calmar, Iowa, and L. G. Hurd, D. J. Lenehan, and W. A. Smith, all of Dubuque, Iowa, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. This is a suit to recover for personal injuries; the cause of action being thus stated in the petition:

"That on the 5th day of June, 1917, plaintiff was employed by Myer & Co., at their elevators in Calmar, Iowa, and that at or about 3 o'clock in the afternoon of said day, while said plaintiff was engaged in unloading feed from a car standing on the railway side tracks to the elevator aforesaid, as was directed by his employer, and which was in the regular course of his business, and while plaintiff was thus engaged, the defendant, through the negligence and carelessness of its agents and employés, without giving the plaintiff any proper or due notice or warning thereof, or time to move away from said car, began to push, shove, and throw with their locomotive engine, in a careless and negligent manner, other cars back to and in the direction of the said car in which this plaintiff was then and there employed and engaged as aforesaid. That by reason of such careless and negligent conduct on the part of the defendant, as above described, the said cars thus thrown and pushed came in the direction of the car in which plaintiff was thus engaged, with great force and violence, and struck it. That at the same moment plaintiff, with all due care and without fault or negligence on his part, was passing from the elevator to the car as the nature of the employment demanded, and as the car struck, he was suddenly thrown with great force and violence into the air, falling and striking his head and shoulders and back heavily upon the ground between the car and elevator. That as a result of such fall he suffered great bodily injury, particularly as follows:

"Plaintiff was severely and permanently injured about the head, back, and lower limbs; also sustaining a hernia or rupture. He also received a severe injury to his spine, and was otherwise permanently injured about his person.

"That by reason of said injuries plaintiff became sick, sore, and bruised, and was confined to bed in the hospital, where he was operated upon for

hernia or rupture; all the time enduring great physical pain and mental suffering. That by reason of said injuries plaintiff's spine and lower limbs are permanently injured and affected to such an extent as to make it difficult for him to walk; also causing him to become tired and exhausted upon the slightest exertion; also by reason of said injuries plaintiff is unable to attend to his usual duties or to do work."

The jury returned a verdict in the sum of $6,150. No point is made that, upon the pleadings and evidence, the plaintiff was not entitled to recover. Complaint is made because of alleged errors in the progress of the trial, involving the admission and rejection of evidence and the submission of the case, including the charge of the court.

Counsel for plaintiff in error file 14 assignments of error, discuss 6 in their brief, and feature 5 in argument. In our opinion, but 2 of these are entitled to consideration, to wit:

"(3) The court erred in sustaining plaintiff's objection to question propounded to the plaintiff as to whether or not he had frequently been under the influence of liquor and was in the habit of becoming intoxicated, and in sustaining objections to such testimony that it was not cross-examination and was not in issue, because defendant had not alleged in its answer that the plaintiff was in the habit of becoming intoxicated."

"(10) The court erred in giving the following instruction to the jury: 'In addition to the fact as to whether or not the picture does show a fracture in the lumbar vertebra,' as claimed, and you should find it did not, the question still remains whether or not the accident that resulted to Mr. Holverson at that time caused an injury to the spine, and the extent of the injury, even though the picture should not show it. If, from the evidence, you find there was an injury to the spine of the plaintiff, you should determine from the evidence what the extent of the injury was, and if it impaired the earning ability of Mr. Holverson to do manual labor in his ordinary occupation; if he has endured pain and suffering, and will continue to do so in the future, and, even though you find his injury does not amount to a fracture of the spine, you should make proper allowance therefor."

Counsel for plaintiff in error sought to elicit from defendant in error the extent to which he had been in the habit of using intoxicating liquor throughout his life. Objections were made and sustained:

"The Court: 'I think it is a matter that is not in issue here, Mr. Hughes. Of course, ordinarily to a certain extent it might be permissible to ask him about his habits; but there is no issue here in regard to these habits for any purpose.

"Mr. Hughes: If your honor will permit me to state this, and I am doing it in the best of faith: What I was going to show was this: That I can and will bring in a whole cloud of expert testimony to show that rheumatic conditions, and the very thing he has described that he has, is the common and the usual and almost invariable result of the continued use of intoxicating liquors.

"The Court: There is no use talking about this. If you wish to produce your witnesses, you may do so. I have ruled upon this question; I don't think it is legitimate cross-examination. Now, if you think you can show the symptoms he has described here, you can show what they represent by other witnesses; but it is quite improper under the cross-examination of this witness upon that ground, especially under the issues that you have got here.

"Mr. Hughes: At this time we ask the court for permission to continue this cross-examination. I desire to state that, in addition to the reasons I have suggested, it is material as bearing on his earning capacity, and on his own testimony as to his earning capacity.

"The Court: You can cross-examine him in certain limits, but to go into

the question as to whether or not he is in the habit of getting intoxicated, you cannot be permitted to do that. You might have alleged that in your answer, but you have not done so. * * * Let that dispose of it, gentlemen. The objection is sustained."

[1, 2] The trial court conceded that "ordinarily to a certain extent it might be permissible to ask him about his habits." Such an inquiry was obviously pertinent, not only as bearing upon the possible cause of the physical condition shown and upon the earning capacity of the plaintiff below, as suggested by counsel, but also upon the further ground that the habit, if established, might be considered by the jury as bearing upon the expectancy of life of the defendant in error, as conditioning, to some extent, the amount of legitimate recovery. It was stipulated that the plaintiff below was 67 years of age at the time of the trial, and that certain life tables show the expectancy of life in a man of that age to be 10.75 years. His maximum earning capacity was placed at $600 per year. The court excluded the testimony for the stated reason that this element of defense was not set up in the answer. The exclusion cannot be sustained. The burden was upon the plaintiff to make his case. The general issue was tendered. Under it, any matter of this nature, affecting the right of plaintiff to recover, or conditioning the amount of his recovery, could properly be shown.

[3] Upon the injuries received the defendant in error introduced Dr. A. H. Blocklinger, who testified that he met Holverson a week or ten days before, and was called upon to make an examination of him and take an X-ray picture. This witness declared that the picture, which was introduced in evidence, disclosed a fracture of the fourth lumbar vertebra—in other words, a permanent injury to the spine. This X-ray picture was the subject of much controversy, and experts introduced on behalf of plaintiff in error were in direct conflict with Dr. Blocklinger upon the matter of its interpretation. Dr. Blocklinger was the only witness who testified to injury to the spinal column, and his testimony was based entirely upon the disclosure made by the X-ray picture. The defendant in error had refused to submit to a physical examination. No medical expert testified to injury to the spine, nor that the symptoms disclosed in the testimony of the plaintiff could properly be assigned to spinal trouble. Dr. Kessle, a physician who saw him shortly after the accident, says:

"I found him suffering from an inguinal hernia on the right side. I didn't make any particular examination of his back under the history; but, under the general examination I always make, I found nothing wrong with his back. I don't recall any complaint that he made at the hospital of injury to his back, or to his ear or head. The hernia was about the size of a large walnut, possibly a little larger. The examination was made a few days before the operation, two or three weeks after the accident happened. I made an examination of his heart and kidneys, etc., and I determined that it was reasonably wise to operate. The operation was performed on the 6th of July, about ten days after he first called at the hospital. He stayed in the hospital about two weeks. His condition was good when he was discharged, and the operation was a complete success. I don't recall any complaint that he made of injury to his back while I was in the hospital, and I don't recall any statement made by him regarding injury to his back or ear."

There is positively no evidence in the record, outside of this X-ray plate, of any injury to the spine. The plaintiff complains of pains in his back. This might be muscular, as well as spinal; it might be rheumatism; it might be traumatic neuritis, secondary to the operation for hernia. In fact, it might proceed from any number of causes wholly unrelated to the spine. But the court, in that portion of its charge which is complained of, invited the jury to determine "whether or not the accident that resulted to Mr. Holverson at that time caused an injury to the spine, and the extent of that injury, even though the picture should not show it." This ushered the jury into the realm of speculation, and permitted a finding based upon practically no evidence at all. It is true that the petition alleges an injury to the back, but this does not necessarily involve the spine itself, and it is well known that an injury to the spinal column is commonly regarded as of special seriousness and permanency.

For the errors specified, it is our conclusion that the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.