B. T. WILSON, Administrator, Plaintiff, Appellee, v. CHARLES W. OXBORROW, Defendant, Appellant; CHARLES H. NOWACK et al., Co-Defendants.

No. 43047.

December 17, 1935.

Huebner & Huebner, for appellant.

Parsons & Mills and Volney Diltz, for appellee.

Miller, Miller & Miller, for codefendants.

Richards, J.—Primary highway No. 6, at a point a mile or more west of the town of Colfax, crosses a small waterway with a bridge about 41½ feet in length. From the bridge the highway extends straight east for perhaps a mile. From the west end of the bridge the highway does not continue directly west, but begins to curve to the south. This curve extends to a point 162 feet west of the bridge, from which point the highway extends for approximately a quarter of a mile in a direct line about 16 degrees south of due west. The curve is approximately a 10-degree curve and is uniform. On the south shoulder, facing the west, were three road signs, one being 1,033 feet west of the bridge with the word "slow", one being 848 feet west of the bridge with the words "narrow bridge", and one being 662 feet west of the bridge with the word "curve". All portions of the highway that have been described were level, with no obstructions in either direction to the view of persons traveling thereon. The width of the paving was 18 feet. The paving constituting the floor of the bridge was of the same width. On each side of the bridge was a low iron railing; the distance between the railings being 18 feet 4 inches. At about 9 :30 a. m. on October 21, 1933, a vehicle called a tractor-trailer was being driven west on this highway toward the bridge. This whole vehicle was 34 feet 8 inches long. Its

forepart was a truck with a cab for the driver, and having the usual two axles. The rear part of the vehicle was a trailer, having beneath it one axle toward its rear. The forepart of the trailer rested on the rear part of the truck. The attachment of the front part of the trailer to the rear part of the truck was by means of two plates and a pin through them, so that the trailer followed the direction of the truck. The trailer had a solidly inclosed body 22 feet in length and $10\frac{1}{2}$ feet in height. The width between the front fenders of the truck is 6 feet 5 inches; the width of the cab on the truck is 6 feet $6\frac{1}{2}$ inches; the width between the exterior sides of the inflated tires on the rear wheels of the truck is 7 feet 7 inches; and width of the body of the trailer is 7 feet and 10 inches. As this vehicle was traveling west toward the bridge, the defendant Oxborrow was driving his automobile in an easterly direction on the same highway, traveling around the curve in the road as he approached the bridge. When the tractor-trailer had progressed to a point where the front part of the vehicle was west of west end of the bridge and the rear part was on the bridge, the defendant's car and the tractor-trailer came into contact on the west portion of the bridge. There was no contact until the two vehicles were in such position in passing each other that the left-hand front corner of the trailer body came in contact with the rear part of the left side of defendant's car, the evidence being that the upper hinge of the rear left door of defendant's car struck the left front corner of the trailer, making a dent therein, and the rear left hubcap of defendant's car was knocked off apparently by the tire on the left rear wheel of the truck, as indicated by a mark on the tire. This left rear wheel of the truck was under the forward part of the trailer. It is also undisputed that the rear left fender of defendant's car was mashed down, but the front left fender and the front part of defendant's car were uninjured and bore no marks of contact with the other vehicle. As a result of the contacts described, defendant's car swerved, struck another car east of bridge, and landed in a ditch at north side of the paving east of the bridge. In this occurrence plaintiff's decedent received injuries from which she died during the same day.

Plaintiff's petition, in setting out the issues upon which the case was tried, alleges that at the time of the accident the front wheels of the tractor-trailer had passed off the bridge but the main body of said truck was still thereon, and alleges that said

body of the tractor-trailer or a portion extended across the center of the pavement and into the half of the paving that was to the left of the truck driver, and alleges that there was sufficient room for defendant's car to pass said truck on said bridge, had defendant not been driving recklessly. These allegations were at no time amended nor altered by substituted pleadings, nor withdrawn. The petition alleges that at the time of the accident the defendant was operating his car in a reckless manner in the following respects:

"1. In driving at a rate of speed which was excessive under all of the circumstances.

"2. In ignoring the signs 'Slow', 'Narrow Bridge', and 'Curve' and proceeding with heedlessness, rashness, and indifference, to the consequences to this plaintiff's decedent in spite of said warning signs.

"3. In rashly, recklessly and heedlessly disregarding the obvious danger of the approaching truck which was or should have been apparent to the defendant under all the surrounding circumstances, in time to avoid the collision.

"4. In rashly, recklessly and heedlessly driving on the wrong side of the highway in the approach of the narrow bridge in question.

"5. That the defendant failed to reduce the speed of his automobile to a reasonable and proper rate when approaching the bridge and the curve in question in violation of the law as it appears in section 5031 of the Code."

The petition alleges that the recklessness complained of on the part of defendant preceded and continued up to the time of the collision.

In addition to the undisputed facts that have been set out above, there was evidence tending to show the following: That the tractor-trailer was traveling over the bridge at around 25 or 30 miles an hour; that defendant's car as it was coming into the westerly portion of the curve was traveling at 40 to 45 miles per hour, with the left wheels of the car north of the black line in the middle of the paving and the right wheels a foot south of the black lines; that the car was swaying quite a lot, meaning that the top of the car was leaning over to its left; that thereafter the defendant's car did not continue in a straight line; that as it neared the truck it appeared as if the driver was fighting for control and was

angling back to his side of the road; that defendant's car had not regained its position south of the black line up to a point 10 feet west of the tractor-trailer when the witness, who testified to the facts just set out, could no longer see defendant's car because of his position in the cab of the truck; that at this point, 10 feet west of the tractor, the back end of defendant's car was still on the left side of center of the road, but at a very slight angle towards its right-hand side; that, when the truck part of the tractor-vehicle passed defendant's car, the latter did not contact the truck excepting that the rear hubcap of defendant's car struck the tire of the wheel on the rear axle of the truck which is under the front end of the trailer; that the front part of the truck and the front end of defendant's car did not come into contact; that on the same morning at the hospital where defendant had been taken on account of his injuries he stated to a constable, "I was driving just a little too fast." There is also testimony of a witness that, when defendant's wrecked car was in the ditch after the accident, the speedometer was sitting at just a fraction over 50 miles an hour.

In his argument plaintiff also sets out and relies on a part of the testimony of defendant on trial of the case, in which defendant stated substantially as follows: That he was driving at a rate of 42 to 45 miles per hour when 848 feet west of the bridge; and that during the time he was traveling the distance from a point 50 feet west of the bridge until the collision defendant did not decrease the speed at which he was then going unless the car slowed down of its own accord; that defendant's brakes were in good order, and that, while his car was traveling at 35 miles per hour, his car could be stopped in 25 feet or less; that defendant first saw the truck when it was about 75 feet away and when defendant was about 50 feet from the bridge; that defendant did not see the truck until it was at the distance just stated because he was constantly watching the black line, and the distance he was watching ahead of the car was whatever distance he could look out over the fender at the black line; that he was watching the black line constantly after entering the curve and was not looking ahead in any way until suddenly he raised his head and there was the truck in front of him; that the whole affair came out of the clear sky; that defendant saw none of the highway signs above described and says he might have or might not have seen the guard rail along the highway; that, when defendant saw the

truck, he decided to give his car a quick turn to the right and that is what he did (the balance of this statement of defendant, not quoted in argument by plaintiff, is that defendant jerked his car to the right because of noticing that the truck was well over on defendant's side of the road and appeared to be bearing over).

■■■ Plaintiff's decedent was riding as the guest of defendant, and plaintiff's recovery, if any, is dependent on the provisions of section 5026-b1, 1931 Code, which provides that the owner or operator of a motor vehicle shall not be liable for any damages to any person riding in said motor vehicle as a guest unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle. Plaintiff's cause of action is based on the claim that defendant was guilty of reckless operation of his automobile at the time of the accident and that such reckless operation was the proximate cause of the decedent's injuries and death. One question presented is whether there was sufficient competent evidence to warrant the submission to the jury of the question of reckless operation of his car by defendant, which we proceed to consider.

Looking at the facts in a large way, it is apparent that the accident happened, that is, the two vehicles "sideswiped", because the trailer of the one vehicle was too far to the south, or defendant's car was too far to the north, or because each vehicle projected somewhat across the middle of the highway. We have held that the driver of a vehicle has the right to use any part of the road he sees fit, outside of cities and towns, excepting when meeting another vehicle, when, under the provisions of section 5020, he is required to give one-half of the traveled way by turning to the right. Despain v. Ballard, 218 Iowa 863, 256 N. W. 426. The accident we are considering happened outside any city or town. Had there been no approaching vehicle to be passed, defendant rightfully could have continued driving a-straddle the center of the paving. But such a vehicle to be passed was approaching within the unobstructed view from defendant's car. Viewed in the light most favorable to plaintiff, the jury could have found that, although the truck was approaching within defendant's unobstructed range of vision, the defendant, driving at 40 to 45 miles per hour, around the described curve, occupying a portion of the left side of the paving, was directing his eyes constantly at the black mark in the center of the paving, as this mark was to be

seen by looking over the fender of the car, and that defendant did not look up and observe the approaching vehicle until its distance from defendant was about 75 feet. Plaintiff claims these facts establish reckless operation of the car under the circumstances shown, and that this reckless operation continued up to the happening of the accident. Plaintiff claims that this alleged recklessness, so continuing, caused the accident, because, as plaintiff claims, there was room enough for defendant to pass the other vehicle if defendant had not been driving with this alleged recklessness.

The facts in this case are comparable to those in Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635, where it was held that reckless operation of his car by defendant in that case was not established by the following facts: Shortly after midnight defendant in that case was driving an automobile upon a highway on which the pavement was 20 feet wide, with two guests sitting in the front with him, the rear seat unoccupied; the highway had been laid in certain curves; defendant, coming from the east, had ascended a long steep hill and had come near to its westerly toe, when the accident happened; one Adamson was traveling east on this highway, and had just begun the ascent of the first rise; he was met by defendant's oncoming car and the cars passed each other so closely that the Adamson car was side-swiped at its left hind part; the sudden movements of the car resulted in plaintiff's decedent's injuries and death; the testimony of Adamson was that defendant was proceeding at 45 miles per hour and that the lights of the Adamson car showed to him defendant's car for a distance of 400 feet. Defendant's testimony was that he did not see the Adamson car until just before the accident. Defendant testified, and plaintiff contended, there was a curve in the road at the place of the accident, but Adamson's testimony negatived the existence of the curve. Plaintiff claimed defendant was reckless in that he was driving at an excessive rate of speed under the circumstances; the circumstances being the steepness of the hill and the curve in the road; and claimed there was recklessness in being inattentive to the circumstances surrounding him while so driving. Accepting the evidence in the light most favorable to the plaintiff, it was held that plaintiff had presented a case of negligence, and not the exceptional case of intoxication or reckless operation. The opinion points out that reckless operation is not to be deemed as a degree of negligence; that it cannot be very satisfactorily defined in

hard and fast terms, but nevertheless it may be readily recognized in the concrete case; that section 5026-b1, Code of 1931, was enacted for the very purpose of preventing recovery by a guest of damages resulting from negligence of the driver of the automobile. In the Shenkle case there was evidence that the lights of the approaching car made defendant's car visible at a distance of 400 feet, but defendant said he did not see the car having these lights until just before the accident.

Somewhat similarly in the case at bar the approaching vehicle was within defendant's vision, but likewise was not seen by defendant until the distance between the cars was about 75 feet. In the case at bar there are considerations argued by plaintiff, not found in the Shenkle case, removing still further the case at bar from the field of recklessness. One of these matters is in the issues made by plaintiff's petition. Attention has been called to the allegations of the petition that the body of the tractor-trailer, or a portion thereof, extended across the center of the pavement and into the truck driver's lefthand side of the highway at the time of the collision, and that there was sufficient room for defendant's car to pass the truck on the bridge had defendant not been driving recklessly.

█▌█ Although on the question now being considered the plaintiff's evidence should be considered in a light as favorable to plaintiff as is reasonably possible, yet under the well-established precedents of this court specific admissions made in the pleadings forming the issues being tried are binding on the party making them, and as to such admissions there is no issue. Lashbrook v. Eldridge, 55 Iowa 344, 7 N. W. 584; Shipley v. Reasoner, 87 Iowa 555, 54 N. W. 470; Wood v. Brotherhood of American Yeomen, 140 Iowa 98, 117 N. W. 1123; Russell v. Dilley, 177 Iowa 522, 159 N. W. 189.

It follows that, regardless of any testimony there may have been to the contrary, plaintiff's pleading settled the fact that the truck or a part thereof extended across the center of the pavement and into the south half of the pavement. It appears in evidence that the width of defendant's car was 66½ inches, less than that of the trailer. But to say that there was recklessness because defendant failed to successfully pass the other vehicle when a portion of the south half of the pavement was occupied by the other vehicle makes it much more difficult to say that there was recklessness in the case at bar than in the Shenkle case. Nor do we think

the circumstances and surroundings relied on by plaintiff attach the attribute of recklessness to the actions of defendant in this case. It is claimed he ignored three road signs, but none of these signs demanded any specific statutory act on part of defendant as in the case of a stop sign. Rather these signs were informative of the necessity of driving in a manner consistent with the information afforded. If it should be conceded that defendant's action be judged in the light of such information, we still fail to find those elements necessary to constitute recklessness. We are not satisfied that these facts establish that defendant was proceeding without heed of or concern for consequences, and that he exhibited no care, coupled with disregard for consequences. We are dealing with the question of recklessness, not negligence. Under all the facts and circumstances shown in the record, we cannot say that the rate of speed in itself established reckless operation of the car. Assuming that defendant was not occupying the right-hand side of the road when he observed the approaching vehicle, the evidence shows no reckless act after the discovery, but does show efforts to give sufficient of the road to the other vehicle to avoid the accident that were all but successful. Defendant's failure to see the approaching car in time to effectively give more of the road to the other vehicle cannot be characterized as recklessness under our prior holdings, including the Shenkle case. See, also, Brown v. Martin, 216 Iowa 1272, 248 N. W. 368. The evidence being insufficient to warrant the submission of the question of recklessness to the jury, defendant's motion for a directed verdict should have been sustained. The case is reversed.—Reversed.

KINTZINGER, C. J., and ALBERT, ANDERSON, DONEGAN, and POWERS, JJ., concur.

PARSONS, J., took no part.