Herbert, J.
Defendants’ first assignment of error is that the trial court erred in permitting plaintiff’s counsel to attempt to rehabilitate plaintiff and plaintiff’s witness Locicero after their testimony had been impeached on cross-examination by the admission of prior statements made by them, which were inconsistent with their testimony upon direct examination. This assignment of error raises two separate and distinct questions for the reason that different types of instruments were sought to be used for rehabilitation after the plaintiff and his witness were impeached.
Ordinarily, prior consistent statements by a witness are not admissible to rehabilitate him where his direct testimony has been impeached by the admission of prior statements inconsistent with such direct testimony. This general rule has obtained for many years in Ohio but should not necessarily be considered as a blanket rule or one which is absolute.
In the case of Cincinnati Traction Co. v. Stephens, Admr., 75 Ohio St., 171, 79 N. E., 235, paragraph three of the syllabus states:
“Where upon the trial of a case a witness is shown to have made statements of fact contradictory to those made by him on the trial, it is error to permit an attempt to rehabilitate the impeached witness by proving that he had made prior statements similar to those made on the trial.”
Since that time there seems to be a paucity of reported decisions covering factual variations which may arise, as in this case.
We will consider first the testimony of the plaintiff.
Defendants’ counsel in his cross-examination of plaintiff referred to a deposition given by the plaintiff about a year before trial and established, by plaintiff’s admissions, that in such deposition he had made statements which were in conflict with statements made by him on direct examination. On redirect examination, plaintiff’s counsel was permitted to refer to the same deposition, over the objection of defendants, and to read therefrom a question and the answer thereto which was contradictory to the answers in his deposition, about which he was questioned by defendants’ counsel, and confirmatory of his answers on direct examination at the trial.
To determine whether it may be proper to rehabilitate a *282 witness by reference to the same document used to impeach him requires examination of other authorities general in their scope.
In 70 Corpus Juris, 1145, Section 1333, it is stated:
“Where a portion of a statement previously made by the witness and apparently inconsistent with his present testimony has been introduced, the entire statement is admissible in rebuttal. So generally, where a contradictory statement has been shown, the party who introduced the witness is entitled to show the entire conversation in which such statement was made, or, when the statement was made when testifying as a witness, the entire testimony given by the witness on that occasion, or where the statement was made in writing to read the entire writing, so far as connected with, or explanatory of, such statement. This is permissible to show the true meaning of the statement and what the witness actually said, and to show that the former statement or testimony of the witness, taken as a whole, is not necessarily inconsistent with his present testimony. Parts of the statement or testimony, or other statements made on the same occasion, which are not relevant or material in the explanation of the inconsistency, are not admissible. The fact that a witness admits stating certain facts in a signed statement does not render the entire statement admissible where the facts as then stated are not contradictory to the present testimony. ’ ’
See Brown v. State, 152 Fla., 698, 13 So. (2d), 3; Blackburn v. Groce, 46 Wash. (2d), 529, 283 P. (2d), 115; State v. Soileau, 173 La., 531, 138 So., 92; State v. Schomaker, 149 Minn., 141, 182 N. W., 957; Williams v. Williams, 87 N. H., 430, 182 A., 177; Vanni v. Cloutier, 100 N. H., 272, 124 A. (2d), 204; Robinson v. New England Cable Co., 79 N. H., 398, 111 A., 269.
The above authorities justify the conclusion that, where, on cross-examination, a witness is impeached by a showing of prior statements made by him in a written instrument and apparently inconsistent with his statements on direct examination, an effort to rehabilitate such witness by reference to the same document used to impeach him is proper so long as the statements referred to and sought, to be introduced in such effort to rehabilitate such witness are confined to an explanation of such apparent inconsistencies and do not serve to inject new issues into the case. .
*283 Holding to this view, we do not find any error in the ruling of the trial court with respect to the first part of the first assignment of error, namely, that relating to the testimony of the plaintiff himself.
As to the effort to rehabilitate plaintiff’s witness Locicero, however, a very different question is raised.
As to such witness, counsel for defendants in his cross-examination had impeached him by reference to a prior written statement and diagram made by him (which were introduced in evidence) in which Locicero made certain statements inconsistent with his testimony on direct examination. Upon redirect examination, the court permitted plaintiff’s counsel to rehabilitate the witness not only by referring to portions of a longhand statement taken by plaintiff’s attorney on still another occasion but finally by admitting in evidence as an exhibit the statement itself. The longhand statement was given at a different time and place than the statement and diagram used by defendants’ counsel to impeach the witness, and it was obviously prejudicial error to allow such an attempt at rehabilitation.
The general rule established in Cincinnati Traction Co. v. Stephens, Admr., supra, is squarely in point in this respect. The following language of Davis, J., in the opinion in that case states the reasoning underlying such a rule:
“The statements of the witness on the trial and the statements made in the paper which she admitted she had signed, knowing its contents, are flatly contradictory. To this extent her credibility was impeached. It could not tend to rehabilitate the damaged reputation of the witness for veracity, in any degree, to show that the witness had repeated a hundred times the later story which she now gave on the trial. The contradiction still would remain, and it would remain unexplained, notwithstanding the fact of repetition. Under the circumstances of this case, the making of the inconsistent statements being admitted by the witness, proof of prior statements consistent with, the statement of the witness on the trial, for the purpose of corroborating and sustaining the credit of the witness, is irrelevant; because it would not prove the truthfulness of the witness, nor the reliability of her recollection, nor that there *284 was no inconsistency between the two statements. 1 Greenl. Ev., 16th Ed., Section 4695.”
The general rule is also well stated as follows in 140 A. L. R., 49:
“The weight of authority is to the effect that when the credibility of a witness is assailed because, on some former occasion, he has made statements that differ from his statements under oath at the trial, his sworn testimony may not be corroborated by proof that on other occasions and at other times his statements were in harmony with his testimony.”
The reasoning and basis for this rule are well analyzed in Commonwealth v. Jenkins, 10 Gray (Mass.), 485, at great length, and for that reason not restated here.
We hold, therefore, that where, on cross-examination, a witness is impeached by a showing of prior statements made by him in a written instrument inconsistent with his statements on direct examination, consistent statements made by him in a different written instrument are not admissible for the purpose of rehabilitating such witness.
Defendants also claim error in the refusal of the trial court to permit counsel to rehabilitate one of their witnesses who had been impeached by the showing of a prior statement inconsistent with a statement made by such witness on direct examination. With respect to this claim, the record shows that, although defendants’ counsel did attempt such rehabilitation, he voluntarily withdrew from this line of questioning after objection thereto by plaintiff had been sustained by the trial court.
Defendants’ second assignment of error is, therefore, not well taken.
The third error assigned by defendants relates to the trial court’s refusal to give the following requested special charge before argument:
“The Legislature of the state of Ohio enacted a law which was in full force and effect on the day this accident happened and a portion of that statute is as follows:
“Upon a roadway which is divided into three lanes a vehicle * * * shall not be driven in the center lane except when overtaking and passing another vehicle * * * or when preparing for a left turn.”
In its general charge to the jury, the trial court covered *285 this and related statutes even more thoroughly than the special charge set forth. This court has held on several occasions, however, that it is the mandatory duty of the trial court to give a requested special charge, where such charge relates to the issues in the case and is a correct statement of law. The most recent pronouncement is in Bradley, an Infant, v. Mansfield Rapid Transit, Inc., 154 Ohio St., 154, 93 N. E. (2d), 672, paragraph five of the syllabus of which states:
“Where, in a civil action, the court is requested to give a written special instruction to the jury before argument, which is linked to the parties to the action and which correctly states the law applicable and pertinent to one or more of the issues of the case and upon a subject which has not been covered by other special instructions before argument, a mandatory duty devolves upon the court to give such instruction in the form presented, and the failure to do so is reversible error.”
Also, in the case of Washington Fidelity National Ins. Co. v. Herbert, 125 Ohio St., 591, 183 N. E., 537, paragraph two of the syllabus states:
“Error in refusing to give such requested'charge before argument is not cured by giving the same instruction in substance or in terms in the general charge.”
The requested instruction was a correct statement as to the duties of drivers on three-lane highways and was pertinent to the issues, and, therefore, the failure of the trial court to give such instruction constituted error even though it included such statement even more forcefully in its general charge.
Defendants’ fourth assignment of error is that the trial court overly emphasized the duty of care, under the law, imposed upon the driver of defendants’ truck and failed to clarify and explain to the jury the corresponding duty of care, under the law, which was imposed upon the plaintiff in the operation of his motorcycle for his own safety.
A reading of the charge as a whole given by the trial court shows that it is a correct exposition of the law in relation to this case with no undue emphasis on the duty of the defendants. It is correct on its face, and any error of which the defendants could complain would be an error of omission. The court, as is customary, asked both counsel at the conclusion of its charge whether they had anything to say, and both replied in the *286 negative. Defendants’ counsel cannot, therefore, rely on any claimed error in this respect. See Rhoades v. City of Cleveland, 157 Ohio St., 107, 105 N. E. (2d), 2.
For their fifth assignment of error, defendants contend that the trial court erred “in refusing to permit counsel for defendants to offer evidence tending to show the intemperate habits of the plaintiff prior to the time of the accident as bearing upon the amount of compensatory damages which the plaintiff was entitled to recover.”
• The record shows that counsel for defendants sought to introduce through plaintiff’s physician a history tending to show that plaintiff had been an alcoholic, to which objection was sustained. He also offered to introduce exhibits relating to previous arrests and convictions for intoxication, which were refused by the trial court.
In support of this claim of error, counsel rely upon the case of Cleveland & Pittsburg Rd. Co. v. Sutherland, 19 Ohio St., 151, the syllabus of which reads as follows:
“S. brought an action against a railroad company, to recover damages for personal injuries occurring to him whilst a passenger on defendant’s cars through the negligence of the conductor, ‘whereby he was rendered permanently lame, and disabled from performing and transacting his necessary affairs and business,’ etc. Upon the trial the plaintiff introduced evidence tending to prove that, prior to the injury complained of, he was employed as a turner in the pottery business, that he was a good workman in that business, able to earn full wages, and was an industrious man; and that by the injury complained of he was crippled, and disabled from properly working at his said business, and earning full wages as before. The plaintiff having rested, the defendant offered to prove that, long before said accident occurred, and thence hitherto, the plaintiff was and had continued to be an habitual drunkard; and that his habits of drunkenness had incapacitated him for labor. Upon objection by the plaintiff, the evidence so offered was excluded by the court. Held — That on the question as to the amount of compensatory damages which the plaintiff ought to recover, the evidence offered had a legitimate bearing, and that in excluding it the court erred.”
It' is interesting to note that a search of Shepard’s Ohio *287 Citations discloses that the Sutherland ■ case has never been cited from that day (1870) to this, nor do we find any other Ohio authorities on this general question.
The facts in the instant case, however, do not warrant comparison with the Sutherland case. Here, there is no contention that the plaintiff was intoxicated at the time of the accident, nor is there any evidence in the record to challenge the plaintiff’s regularity of work attendance or to raise the question of loss of time from work for any reason whatever except by a proffer of court records indicating several arrests and convictions, spread over a number of years, for intoxication. In respect to one proffer of defendants ’ exhibit 13, for example, relating to an alleged arrest and conviction on November 7, 1953, for drunk and disorderly conduct in New Castle, Pennsylvania, which was on a Saturday two weeks before the date of collision resulting in the damages for which this action was brought, there is nothing in the record to indicate that plaintiff lost any time from work by reason of such conviction, nor was there any proffer to that effect. On the other hand, the record shows that plaintiff had been working as a millwright for 12 years before the collision, his duties being to “repair machinery for a daylight crew to get started on for the next day * * * to see that the machinery was in fit' condition to be run for the next day, for the day turn crew.”
So far as the trial court’s exclusion of this and other exhibits similarly proffered by defendants is concerned, no foundation was laid by which they could properly present proof of such a nature. This question has been considered in other jurisdictions, as cited in briefs of both parties here.
In Musgrave v. Novak (1954), 379 Pa., 184, 108 A. (2d), 808, it was held that, in a personal injury action, where plaintiff testifies concerning his alleged loss of earnings because of injuries, and that he had worked regularly prior to the accident, testimony as to his periodic intoxication is properly permitted to refute his testimony that he had worked regularly prior to the accident.
In Chicago, M. S St. P. Ry. Co. v. Holverson (1920), 264 F., 597, 9 A. L. R., 1401, the trial court refused to allow defendant to examine plaintiff as to his habits of using intoxicating liquor. The Circuit Court of Appeals, in reversing, said;
*288 “The trial court conceded that ‘ordinarily to a certain extent it might be permissible to ask him about his habits.’ Such an inquiry was obviously pertinent, not only as bearing upon the possible cause of the physical condition shown and upon the earning capacity of the plaintiff below, as suggested by counsel, but also upon the further ground that the habit, if established, might be considered by the jury as bearing upon the expectancy of life of the defendant in error, as conditioning, to some extent, the amount of legitimate recovery.”
Here there was no cross-examination of plaintiff along this line or any foundation laid therefor. In fact, the trial court suggested that the employment record of plaintiff would show more accurately than any intoxication convictions whether he was working at such times.
The case of Dollarhide v. Gunstream (1951), 55 N. M., 353, 233 P. (2d), 1042, was an action to recover for wrongful death, in which inquiry was allowed as to the decedent’s drinking habits. The court in approving such inquiry, stated:
“In the first place, there is no evidence that the deceased had been drinking or was under the influence of intoxicating liquor at the time of and prior to the accident; but the cross-examination was proper for other reasons. The fact sought to be elicited by the examination was whether the life expectance of appellant’s intestate, his probable earnings during the residue of his life, considering age, health, ability, disposition, habits and expenditures were as appellant had testified.”
A comprehensive discussion of this issue is contained in McCarty v. Gappelberg (Tex. Civ. App., 1954), 273 S. W. (2d), 943, 46 A. L. R. (2d), 93, cited by plaintiff, which was an action for injuries to a pedestrian. In the opinion the court stated:
“The question posed by this appeal is whether proof is admissible to show a history of intemperate habits on the part of a plaintiff in the absence of any competent evidence raising an issue as to whether he was intoxicated at the time of the occurrence of the accident in which he sustained injuries, and/or in the absence of competent evidence raising an issue as to whether his injuries and their results were affected by such prior intemperate habits.
it#*#
*289 “As applied to the instant case, we see no merit in the defendant’s contention that the same character of evidence is admissible upon the measure of damages and in mitigation of the damages because a plaintiff who is habitually intoxicated, or a drunkard, would not have as great an earning capacity as one who was of sober habits or would not have as much life expectancy. We are not convinced that the fact that a person is of intemperate habits is, in itself and of itself, evidence tending to establish less ability to earn money or a diminished earning capacity. Neither are we convinced that such a fact is, in itself and of itself, evidence tending to establish a reduced life expectancy.
6 Í * # *
“In the instant case there is no contention that the plaintiff’s physical condition is resultant in any respect from plaintiff’s antecedent living habits or vices. Neither is there any evidence thereof, or that the plaintiff’s future earning prospects or life expectancy is diminished for any reason other than his injuries. If his antecedent intemperate habits actually will militate against him in the respects with which we must here concern ourselves, one would necessarily enter the realm of speculation and conjecture in order to find that it would, or to further find a degree of militation.
“Certainly the testimony about the plaintiff’s addiction to the use of alcohol prior to the occasion in question would be calculated to prejudice the minds of the jury. The damage mitigation, that the defendant contends was thereby tended to be shown, is too remote. There is no direct evidence as to whether the plaintiff has or will suffer any loss in his earning capacity as result of his vices. The prejudicial nature of the evidence requires its exclusion under general rules.”
The reasoning set forth in the above case seems applicable to the instant case. Although we are in accord with the rule laid down in the Sutherland case, supra, we are further of the opinion that in an action to recover damages for personal injuries, evidence as to plaintiff’s intemperate habits prior to the occasion when such injuries were sustained is admissible as tending to show a mitigation of damages for claimed impairment of ability to work, only after it is established that plain *290 tiff’s ability to work actually was impaired prior to such occasion, and that such impairment was the result of such intemperate habits.
Holding to this effect, we find no error in the trial court’s ruling on that issue here.
For the reasons set forth hereinbefore, however, the judgment of the Court of Appeals affirming the judgment of the Court of Common Pleas is reversed, and the cause remanded for new trial in accordance with this opinion.

Judgment reversed.

Weygandt, C. J., Stewart and Bell, JJ., concur.
Zimmerman and Matthias, JJ., concur in the syllabus and judgment.
Taet, J., concurs in paragraphs one, three and four of the syllabus and in the judgment, dissents from paragraph five of the syllabus, and would concur in paragraph two of the syllabus if revised so as to substitute the word “and” for the word “or” where it appears therein.