CENTURY "21" SHOWS and Kenneth Wayne O'Guin, Appellants,

v.

Charles W. OWENS, Appellee.

No. 19035.

United States Court of Appeals Eighth Circuit.

Sept. 9, 1968.

 

John D. Randall, Cedar Rapids, Iowa, for appellants.

John C. Beekman and William C. Ball, Waterloo, Iowa, for appellee.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

On August 1, 1965 about noon the plaintiff Charles W. Owens, while operating his motorcycle on U. S. Highway 218, approximately 2½ miles south of LaPorte City, Iowa, in Benton County, was hit or sideswiped in his own southbound lane by a 1962 GMC pickup truck owned by the defendant Century "21" Shows and operated by its employee, defendant Kenneth Wayne O'Guin. A judgment based on a jury verdict for $85,000 was entered for plaintiff and the defendants appeal. This is a diversity case, Century being a Florida corporation and O'Guin a resident of Tennessee. The substantive law of Iowa applies. We affirm.

O'Guin, a young man of 17 or 18 years, had driven the pickup truck from Quincy, Illinois, after he had stayed up late the night before operating the dodge bumper car rides for Century and dismantling the ride to load on the moving trucks. After finishing these chores O'Guin went to sleep in the pickup truck, awoke, and left Quincy before daylight. He was traveling in a northerly direction along Highway 218 at a speed of 30 to 40 miles an hour when he approached a sweeping, almost right-angle curve to the left. The roadway was 24 feet wide and allowed a field of vision of about 300 feet along and around the curve. Going into the curve his truck went off the road on the right-hand shoulder and in turning back onto the road he either turned too abruptly or a drop-off of 2 to 5 inches from the pavement to the shoulder caused his truck to veer sharply across his lane into the southbound lane, where he came in contact with Owens' motorcycle. Viewing the evidence most favorable to the verdict, the truck left the road completely on the curve and returned to the roadway in 47 feet, proceeded 62 feet as measured from where the left front tire of the pickup came back on the highway, to the center line of the highway and then proceeded approximately 18 feet from the center line to the point of impact at approximately the middle of the southbound lane. The pickup then came to rest 121 feet from the point where the left front tire crossed the center line to a ditch on the left-hand side or west side of the road. O'Guin did not see the plaintiff Owens until he had turned the truck back onto the highway. At this point in time Owens was 50 to 60 feet from the point of impact. Thus, O'Guin was approximately 80 feet from the point of impact when he turned back onto the highway. Traveling at 30 miles per hour he would be proceeding 44 feet per second and would cover this distance in less than two seconds.

Owens and his daughter Patricia, who was also riding on the motorcycle, were traveling south at 50 to 55 miles an hour approaching the curve. Owens saw the pickup truck leave the road but did not realize that the driver O'Guin had inadvertently driven onto the shoulder. According to Owens, the truck had proceeded completely onto the shoulder and he did not realize the pickup truck was in any difficulty until it came back onto the highway and abruptly crossed into his lane. Owens testified that only two or three seconds elapsed from the time he saw the pickup go off the road until the time of the collision. This estimate of time is verified by the speed and distances established by the evidence. Owens had slowed to about 45 to 50 miles per hour at the time of the impact. When O'Guin noticed that he was going to hit the motorcycle he applied his brakes as forcefully as he could and attempted to turn to the right. The left front of the pickup came in contact with the left side of the motorcycle and the left side of the person of Owens. Owens managed to stay on the motorcycle and bring it to a stop but Patricia Owens was thrown off into a ditch at the side of the highway, receiving injuries from which she subsequently died. The injuries and subsequent death of Patricia Owens are not an issue in this case, as a separate suit was filed for her death and settled prior to this trial. Owens suffered severe injuries which will be discussed in more detail under the issue of the excessiveness of the verdict.

Defendants contend the trial court erred in (1) giving instructions on specific negligence when only general negligence was set out in the complaint, (2) failure to give defendants' requested instruction on highway usage, sudden emergency and last clear chance, (3) refusing to permit defendants to cross-examine plaintiff on the use of intoxicating liquors, (4) allowing the fact and nature of Patricia Owens' injuries and death to be received in evidence, and (5) refusing to set the verdict of $85,000 aside as excessive.

The complaint alleged that O'Guin "negligently drove and operated" the pickup truck "into the lane for opposing traffic and into plaintiff who was driv-

ing a motor bike in his own lane of traffic." The Court in Instruction No. 2 stated that plaintiff specifically claimed that defendant O'Guin was negligent in failing to keep a proper lookout and failing to have his vehicle under control, in failing to drive his vehicle on the right-hand side of the road, and in failing to give way to the right to oncoming traffic. These specifications were not pleaded but were fully developed by the evidence.

Defendants objected to the instruction on lookout because it was not specifically pleaded. Defendants contend the giving of specifications of negligence not pleaded, deprived defendants of the right to be informed of the negligence of which they are charged and of an opportunity to give a defense, citing Davis v. Hoskinson, 228 Iowa 193, 290 N.W. 497 (1940); and also claim prejudicial error in submitting an issue which has no support in the record. Brown v. Lyon, 258 Iowa 1216, 142 N.W.2d 536 (1966).

■ The pleadings are governed by federal law. Rule 8(a), Fed.R.Civ.P. states in part that the claim for relief:

"* * * shall contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and

\* \* \* \* \* \* .

"(e) (1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading * * are required."

Under this rule a general averment of negligence, stating simply and concisely the facts of the collision is sufficient. Defendants are given ample and sufficient notice of the type of claim presented.

As discussed in 1A Barron and Holtzoff, Federal Practice and Procedure, § 251 (1960) at p. 29:

"The only function left to be performed by the pleadings alone is that of notice. For these reasons, pleadings under the rules may properly be a generalized summary of the party's position, sufficient to advise the party for which incident he is being sued, sufficient to show what was decided for purposes of res judicata, and sufficient to indicate whether the case should be tried to the court or to a jury. No more is demanded of pleadings than this; * * * ".

If defendants desire a more definite statement a motion may be filed under Rule 12(e); and as is usually the case the specifics of negligence are developed in discovery proceedings. Again as analyzed by Barron and Holtzoff, ibid, § 270, pp. 119–123:

"* * * a detailed statement of the circumstances constituting negligence is not necessary or desirable, and a general allegation of negligence will be sufficient. If defendant needs details as to the specific manner in which he is claimed to have been negligent, he can obtain them under the provisions for discovery."

■ The specifics of negligence in this case were fully developed at the trial and it is apparent on the record that this collision was caused by O'Guin's negligence in the operation of the pickup truck and in allowing that vehicle to cross the center line of the roadway, striking the plaintiff. The specific acts of negligence in the Court's instruction were developed at the trial, were certainly embraced in the general averment of negligence, and were properly set forth in the instruction.

■ Even issues not raised by the pleadings but tried by express and implied consent of the parties shall be treated as raised. Rule 15(b), Fed.R. Civ.P.[1]

---

I. Rule 15(b) in part states:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any

We do not think the defendants' objections to the instructions were well taken.

■ Defendants claim that the negligence pleaded is based on I.C.A. § 321.298, which in substance commands approaching vehicles to drive to the right allowing one-half of the traveled way to each vehicle; but that under Iowa law every vehicle outside of cities and towns has a right to occupy any part of the road, except when meeting another vehicle. Wilson v. Oxborrow, 220 Iowa 1135, 264 N.W. 1 (1935). The specifications of negligence relating to failure to drive a vehicle on the right-hand side of the road is alleged to have been taken from I.C.A. § 321.297; this section requires that an automobile be operated on the right-hand side of the street in cities and towns. Defendants desired an instruction based on the *Wilson* case stating that they:

"* * * may use any portion of said highway except upon meeting an automobile being operated in the opposite direction * * *, [and that]

* * * * * *

"* * * such law does not mean that in the country each driver shall at all times be on the right side of the road. Each driver in the country is entitled to the use of the entire highway. Each has the right to drive upon the left hand side of the road except when such drivers are about to meet. Even then, the presence of a driver upon the left hand side of the road and the resultant collision, and the prima facie case of negligence arising therefrom, is subject to being rebutted * * *."

This collision occurred as the vehicles were at the point of passing each other and where each should have been on its own side of the road. Even if the Iowa law permits a vehicle to use any part

of the road outside of towns and villages except when approaching another vehicle, that law would not be applicable to this situation.

Defendants also claim that they were entitled to a "sudden emergency" instruction. They contend that the drop-off from the pavement to the graveled shoulder and the necessity on the part of O'Guin to turn back onto the pavement was sufficient to permit the jury to consider this defense.

■ The defense of sudden emergency is available to a driver to justify his actions which, absent the emergency, would amount to negligent operation of a motor vehicle. It is incumbent on the party claiming excuse on the grounds of sudden emergency to prove it. Overturf v. Bertrand, 256 Iowa 596, 128 N.W.2d 182 (1964). "Further, to be available as a legal excuse an emergency must not be of the driver's own making in whole or in part." Erickson v. Thompson, 257 Iowa 787, 135 N.W.2d 107, 112 (1965). Regardless of the circumstances which occurred prior to the time in which O'Guin found himself on the shoulder of the road, it is apparent that his position there was of his "own making in whole or in part." For this reason we do not adopt the defendants' argument that "The fact of the drop-off and the necessity on the part of defendant O'Guin to turn back onto the road is sufficient to permit the jury to consider sudden emergency."

■■ Defendants' alternative reason for arguing the applicability of the sudden emergency doctrine is tied in with their allegation of error in not instructing the jury on the doctrine of last clear chance. The burden of proving the application of the last clear chance doctrine is on the one who advances it. Olson v. Truax, 250 Iowa 1040, 97 N.W.2d 900 (1959). For the doctrine of last clear

time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."
And as noted by Barron and Holtzoff, ibid, § 449, p. 777 commenting on the ef-

fects of Rule 15(b): "If no objection was made to the evidence at the time, the pleadings are deemed amended."

chance to be applicable against this plaintiff, the defendants must prove: (1) the plaintiff had knowledge of O'Guin's presence; (2) the plaintiff realized the defendant O'Guin's peril; and (3) the plaintiff had the ability to avoid the injury to defendant O'Guin thereafter. Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65 (1955).

It appears to be somewhat strained to contend that O'Guin was in peril and that Owens with the means and opportunity at hand, could by the exercise of reasonable care, avoid the collision.

The record indicates that the distance from where the pickup truck came back on the road from the shoulder to the point of collision was approximately 80 feet. O'Guin was traveling 30 to 40 miles per hour. At 30 miles per hour a car would travel 44 feet per second. If we take the view most favorable to O'Guin, i. e., that he was traveling 30 miles per hour, less than 2 seconds would have elapsed from the time O'Guin's truck came back on the road until it reached the point of impact with Owens' motorcycle. In Koob v. Schmolt, 241 Iowa 1294, 45 N.W.2d 216 (1950), the Iowa court held that negligence should not ordinarily be predicated on an emergency confronting a driver who has only three seconds to make a decision. We are concerned here with a situation in which the estimates of speed and distance on which we have to base our decision were made by individuals under the stress and panic of a pending collision. "To split a second of time by the mere estimate of witnesses and to use such estimate as a basis for a cause of action is a speculation too refined and too uncertain to warrant its adoption as a precedent." Ryan v. Trenkle, 199 Iowa 636, 200 N.W. 318, 321 (1924). In the *Menke* case, supra, where it was shown that Mrs. Menke had somewhat less than two seconds to act, the court said at 73 of 69 N.W.2d: "If the record here shows anything affirmative, it is that Mrs. Menke had no real time or opportunity—no 'clear chance'—to avoid the collision within the meaning of the rule."

We do not think that the last clear chance doctrine is at all applicable to the present situation, as Owens had no clear chance to avoid the collision. The negligence of O'Guin was only apparent to Owens for a period of less than two seconds and for the law to require Owens under these circumstances to swerve his motorcycle off the roadway and onto the shoulder and possibly the ditch is asking too much. To realize that O'Guin's pickup truck was not under control, to react to that realization and to take successful measures to avoid the collision within two seconds or less would tax the reflexes of a superman.

The plaintiff's original complaint prayed judgment in the amount of $167,000 and claimed, in addition to personal injuries and medical expense, physical pain and mental suffering, loss of wages and earnings, past, present or future, and loss of earning capacity. During the trial the issue of loss of wages and future earning capacity was withdrawn and the prayer reduced to $145,000. The defendants sought to introduce evidence relating to Owens' use of intoxicants and to his proclivities for gambling, pointing out that he had only made four $15-payments for the support of a child by his first wife from whom he was divorced in 1946. Owens' second wife had also cross-petitioned for a divorce in a case started by Owens in about 1965 (date not shown). The divorce petition and cross-petition contained derogatory statements regarding Owens' conduct. The depositions of both wives were taken but were not offered into evidence. The defendants sought to introduce the divorce petition and cross-petition and to cross-examine Owens on his use of intoxicants on the theory that habits were a factor to be considered in regard to earning capacity and longevity. The earning capacity issue was withdrawn from the case, thus withdrawing the issue of the effect of plaintiff's personal habits on his earning capacity.

The divorce petitions were properly refused into evidence as they constituted hearsay declarations. The

divorce petitions are clearly hearsay and of no probative value against Owens. Of course, any pleading may be used against the pleader as an admission of the facts stated therein. McCormick, Evidence, § 242, p. 509. As to Owens, any statements made therein are clearly hearsay and without probative force. As noted in Hinds v. McNair, 235 Ind. 34, 129 N.E.2d 553, 567 (1955), where the court refused to allow into evidence a divorce complaint of the former wife of the defendant, the wife not being a party to the action:

"The appellants cite no cases in support of their contention. It appears to us that this complaint without question is hearsay and the allegations and statements therein are not those of any party to this cause of action. It seems very obvious to us the exhibits were not admissible in evidence."

Also see Briggs v. United States, 90 F. Supp. 135, 142, 116 Ct.Cl. 638 (1950); Wood v. Self, 362 S.W.2d 188 (Tex.Civ. App.1962).

■ Some of the direct evidence obtained through the deposition of Owens' wives and the divorce pleadings were excluded from evidence by a Motion in Limine. The Court on plaintiff's request excluded the evidence of the first wife as being too remote in time and immaterial on the question of pecuniary loss suffered by plaintiff. An inquiry in connection with Owens' drinking habits might have some bearing on his longevity and would be permissible. Chicago, M. & St. P. Ry. Co. v. Holverson, 264 F. 597, 9 A.L.R. 1401 (8 Cir. 1920). The Court did allow the defendants to question Owens on his personal habits for the seven-year period immediately prior to the trial date in 1965 and the defendants in cross-examination of Owens asked if he had played any cards in that period, which he answered in the negative. The defendants then asked him:

"Q. Did you take a drink now and again in the tavern?

"A. Occasionally."

No further questions were asked of Owens on this issue nor was any evidence introduced or read from the deposition of Anna Owens or Virginia Blacketter, his first wife, nor was there any offer of other evidence relating to plaintiff's alleged drinking and other habits. There was no question raised in this case as to the use of intoxicants at the time of the collision and the pursuit of this point in the trial could only legitimately relate to the possible effect the use of intoxicants would have upon the longevity of the plaintiff. The trial judge certainly exercised permissible discretion in limiting the inquiry on the plaintiff's personal habits to a period of the past seven years.

■ Included in the defendants' charges of evidentiary errors is the allowance of the fact of Patricia Owens' injury and death to be brought to the attention of the jury. Defendants filed a pretrial motion that this evidence be excluded. The Court ruled that it would be proper for plaintiff's counsel to state in his opening statement that Patricia Owens, the daughter of the plaintiff, was a passenger on the motorcycle at the time of the collision and that she received injuries as a result of the collision from which she subsequently died. The Court also required that the above statement be accompanied with an explanation that this present case did not include any claim for any damages for the injuries and death of Patricia Owens. The Court felt, and properly so, that the jury should be given a full picture of the collision. "Injury or death of others in the same accident is an incident of the accident, * * * and is admissible as part of the res gestae, * * *." Redmond v. Huppertz, 71 Ill.App.2d 254, 217 N.E.2d 85, 88 (Ill.App.1966).

■ We do not think it was necessary to allow the plaintiff's doctor to testify over defendants' objection to the nature of Patricia Owens' injuries but we do think this is largely an area that is left to the discretion of the trial judge and the evidence was not prejudicial. Since Patricia's injuries were not an is-

sue in this case they would have no probative value on Owens' injuries and very little probative value on the extent of the impact, it being uncontested that she died as a result of the injuries. The receipt of this evidence being discretionary gives no cause for a retrial in this case.

The fact that Patricia Owens was on the motorcycle with her father would be brought into evidence in explaining the collision and it was perfectly proper for the trial court to allow an explanation of the absence of Patricia Owens as a witness. Although no adverse comment could have been made on this fact, the jury if not advised of her death might still draw an adverse inference on her failure to appear as a witness. The Court advised the jury of this factual facet of the collision and also admonished the jury that such evidence should not be considered for any other purpose.

 Defendants complain the verdict of $85,000 is excessive. In determining whether a verdict is excessive, a comparison of verdicts in other cases is of limited value as each case must be evaluated according to the evidence peculiar to that case. Fetters v. City of Des Moines, 149 N.W.2d 815 (Iowa 1967). Courts in considering this issue must take into consideration the constant erosion of the purchasing power of the dollar and should not invade the province of a jury, unless the verdict is so excessive as to be out of all reason and to shock the conscience of the court.

Owens' injuries were severe. He suffered a compound comminuted fracture of the left leg. Both the tibia and fibula were fractured and part of the tibia was missing. Much of the muscle and tissue was lost or damaged beyond repair from the middle portion of the leg and there was extensive loss of skin over the injured area. A skin graft was done here by removing a piece of skin from the upper leg and placing it over the injured area. Owens also suffered a fracture of the left forearm, a fracture of the left wrist and severe injury to the bones of

his left hand. The fifth finger of the left hand was torn off by the accident and the fourth finger of the left hand had to be surgically removed later as it was painful, crooked and not useful. The severe nature of the fracture of the left leg necessitated the insertion of a metal pin, and placing the leg in a full leg cast.

Owens was confined to bed, in various hospitals from August 1, 1965 until December 15, 1965. The leg cast was removed June 16, 1966. Owens thereafter received physiotherapy on his leg four times per week for about five months.

 Dr. Waldorf, plaintiff's expert witness, testified that Owens has a 35 per cent disability to the leg, a 30 per cent loss of function of the left wrist and hand and a 30 per cent permanent disability to his entire body. The injuries, pain and suffering and permanent disability support this verdict of $85,000.

 This Court has consistently held "that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial courts and not that of this Court". Zimmerman v. Mathews Trucking Corp., 203 F.2d 864, 868 (8 Cir. 1953); accord, Railway Express Agency, Inc. v. Epperson, 240 F.2d 189 (8 Cir. 1957); National Alfalfa Dehydrating & Milling Company v. Sorensen, 220 F.2d 858 (8 Cir. 1955); Glendenning Motorways v. Anderson, 213 F.2d 432 (8 Cir. 1954); St. Louis Southwestern Ry. Co. v. Ferguson, 182 F.2d 949 (8 Cir. 1950). "The assignment of error that the verdict is excessive is not properly addressed to this court", New York, C. & St. L. R. Co. v. Affolder, 174 F.2d 486, 493 (8 Cir. 1949), and cases cited, reversed on other grounds 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683.

 The excessiveness of a verdict is a matter primarily directed to the judgment and the conscience of the trial judge on motion for a new trial. St. Louis Southwestern Ry. Co. v. Ferguson, supra, 182 F.2d at page 954. The question of the size of the verdict is to be considered by the trial judge in a motion

for a new trial.[2] It is within the discretion of the trial judge whether or not to allow the verdict. Solomon Dehydrating Company v. Guyton, 294 F.2d 439 (8 Cir. 1961). We, of course, may consider and alter the findings of the trial court when it is clear that injustice has resulted due to an abuse of discretion on the part of the trial judge, as "where the verdict is so manifestly without support in the evidence that failure to set it aside amounts to an abuse of discretion." Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 408, 4 A.L.R.2d 1064 (4 Cir. 1948); see, Solomon Dehydrating Company v. Guyton, supra; Chicago & N. W. Ry. Co. v. Curl, 178 F.2d 497 (8 Cir. 1949). We do not think that the $85,000 verdict awarded Owens, taking into account the extent of his injuries, amounted to "plain injustice" or was a "monstrous" or "shocking" result.

Judgment affirmed.

See also D.C., 267 F.Supp. 142.

2. "We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." Solomon Dehydrating Company v. Guyton, 294 F.2d 439, 447, 448 (8 Cir. 1961).